## CHRISTMAS *v.* RUSSELL.

1. Where a bill does not relate to some matter already litigated in the same court by the same persons, and which is not either in addition to, or a continuance of an original suit, it is an original bill, not an ancillary one.
2. Accordingly, when such bill is between citizens of the same State, the Circuit Courts have no jurisdiction.

3. A mere promise, though of the clearest and most solemn kind, to pay a debt out of a particular fund, is not an assignment of the fund even in equity. To make an equitable assignment there should be such an actual or constructive appropriation of the subject-matter as to confer a complete and present right on the party meant to be provided for, even where the circumstance do not admit of its immediate exercise. If the holder of the fund retain control over it, as *ex gr.*, power on his own account, to collect it or to revoke the disposition promised, this is fatal to the thing as an equitable assignment.

APPEAL from the Circuit Court for *the Southern District of Mississippi;* the case being thus:

Richard Christmas, of *Kentucky*, on 30th November, 1859, sold to one Lyons, of Mississippi, an estate there, and received in consideration therefor his promissory notes, each for $16,666, payable to him the said Richard or bearer, with interest, with a mortgage on the estate.

These notes subsequently (May, 1866) passed into the hands of H. H. Christmas, also of Kentucky, the son of Richard by his first wife, who, in the following June, had a settlement and compromise with Lyons, who paid a certain sum in cash, and for the remainder executed his two promissory notes in favor of said H. H. Christmas, for $8339.90 each; one payable December 1st, 1866, and the other February 1st, 1868. These notes were to be secured by the mortgage aforementioned.

The said H. H. Christmas being indebted to Payne, Huntington & Co., of New Orleans, pledged to them, in February, 1867, the first of these notes. Neither note being paid, two suits were instituted on them in the Circuit Court of the United States *for the Southern District of Mississippi;* one in the name of H. H. Christmas, for the use of Payne, Huntington & Co., on the pledge above stated, and the other in his own name and for his own use.

A bill was also filed to foreclose the mortgage on the notes, on which these respective rights were asserted.

On the 1st May, 1868, H. H. Christmas entered into a written obligation with Mrs. Mary Christmas, the second wife of said Richard (and like her husband, of Kentucky); in which, in consideration of her assuming to pay the debt

due to Payne, Huntington & Co., he transferred to her the note of Lyons, left in pledge with them. She having paid the note by a sale of her separate estate, made *by Richard, under a power of attorney executed by his wife, and by a deed executed by him, as trustee for her, in June,* 1868, the bill to foreclose the mortgage was amended, by showing this transfer and the payment of the amount due to P., H. & Co., and application was made to substitute her name for that of P., H. & Co., on the action at law. On the second of these notes a judgment was rendered on 13th November, 1868, for $8868. The other one remained in suit.

So far as to this part of the case. And now the subject-matter changes. It is thus:

On the 25th of May, 1860, one Russell, also of *Kentucky,* for himself and other persons there, for whom he sued, obtained a judgment for about $12,000 against the father, Richard Christmas, already named. The judgment was brought by writ of error to this court, and execution stayed by a supersedeas bond executed by the said Richard and one *Yerger,* and a certain *Anderson,* as his sureties. To induce Yerger and Anderson thus to become his sureties, Christmas had promised them a counter security of some sort, and he had in fact given them such security—the note of one Martin—which, however, to promote in some way his convenience, they had surrendered to him. The matter stood thus until the war of the rebellion closed, A.D. 1865. Christmas had during the war gone to Texas, and thence went to Havana, and thence to Europe. On reaching Liverpool he wrote, October 23d, 1865, a letter to Yerger, thus:

"I feel great uneasiness about your liability on the bond in suit of Russell against me. I have ever held the Lyons note as *sacred for the payment of this debt, and have it now in New York endeavoring to sell it with the mortgage to pay this debt. I expect to hear from it daily. If not sold I will send it to you as soon as I return.*"

On the 14th of February, 1866, he wrote again, stating that he had countermanded the sale of the Lyons note, and

that he would make a liberal arrangement with him, and adds:

"I could not safely send you Lyons's note by mail, as it is payable to me or bearer; hence, if lost, might put me to much trouble."

On the 20th of February, 1866, he wrote again to Yerger, stating that he had written on the 17th, proposing that if Lyons would take up Russell's debt he would allow it as a credit, dollar for dollar, on the note; but reflecting that the judgment *might not* be affirmed in the Supreme Court of the United States, and that the note was well secured, he requests that no further action be had until he can be better informed, suggesting that the rents of the land subject to the mortgage would pay the amount for which Yerger was surety, and then adds:

"I will hold this note—$16,666, and many years' interest— *always* subject to this debt, provided the judgment is affirmed, until which time let the matter rest *where* it is.   When a compromise is made it must be through you as surety.   I am sorry you told Lyons of our understanding, as he will be apt to let Russell know, and prevent an advantageous compromise."

On the 21st of February, 1866, he wrote again from Liverpool, saying, "I wrote you on the 17th and 20th," suggesting that he had written to Burwell to compromise the Russell debt, and adds:

"You may rest assured I will protect you with the Lyons note. . . . This fact should not be known, to enable me to make a good compromise."

On the 12th of May, 1866—after the transfer of the notes to his son, H. H. Christmas, which he says he had been compelled to make—he adds:

"In this I hope I have not lost sight of my purpose to protect you," &c.

In this state of things—and Richard Christmas being now wholly insolvent—Russell and the others, for whom he had

recovered the judgment, filed a bill in the same, the Circuit Court for the Southern District of Mississippi, against Lyons, still of Mississippi, and all three of the Christmases, father, wife, and son—these last three, like himself, as already mentioned, being citizens of Kentucky—setting forth the facts above stated, including the citizenship; and seeking to enjoin Lyons from paying his notes to either Mrs. Christmas or to the son, H. H. Christmas, and seeking to cause the payment (when payment was to be made), to be made to *them*, on the ground of their already-mentioned judgment against the father, Richard Christmas (for the payment of which Yerger and Anderson, his sureties, had, by the affirmance of the judgment, in this court, become equally liable with him), and on the further ground that the said Richard had made an equitable assignment of the fund to them, and that they were in equity entitled to enforce the security.*

The court below decreed for the complainants, " it appearing," as it said, " that the said Richard, with intent to provide for the payment of the judgment, in case the same should be affirmed, and to induce the said Yerger and the said Anderson to become his sureties aforesaid, did agree to provide special indemnity to them; and with such intent, and to the end that said judgment should be paid, and his said sureties saved harmless, did *assign* to them, his said sureties, the debt mentioned in the complainants' bill, as due from the defendant, Lyons, to him, the said Richard;" " and did so assign and set apart the said debt to the sureties aforesaid, as to give them a lien upon the said debt, which in equity they are entitled to enforce for the purpose of paying the said judgment, and that their lien attaches to and binds the debt due from Lyons, and not converted by said Harry and Richard, and which debt is evidenced by the judgments recovered in this court in favor of H. H. Christmas, and of H. H. Christmas for the use of Mary E. Christ-

---

* Yerger and Anderson, citizens of Mississippi, were also made defendants. Really, however, they were complainants. Lyons was, of course, but a stakeholder. The real parties in interest were H. H. Christmas and the wife.

mas, and by a decree in this court against Lyons in favor of said H. H. Christmas and Mary E. Christmas, foreclosing the mortgage, executed by said Lyons, to secure the payment of said debt, due by him as aforesaid."

The court accordingly decreed payment to the complainants of the fund in court, which had been paid by Lyons, $7873, and that the said Lyons pay to them $8192, with interest from the 21st May, 1869.

From this decree the present appeal was taken. The errors assigned being—

*First.* That under the Constitution, which declares that the judicial power shall extend to " *controversies between citizens of different States,*" the court below had no jurisdiction over the defendants, Richard, H. H., and Mary Christmas, who were stated in the bill to be citizens of Kentucky.

*Second.* That if this was not so, and if the court below had jurisdiction, the evidence did not authorize the conclusion that there had been an equitable assignment.

*Mr. P. Phillips, for the appellants :*

As to jurisdiction. The complainants are citizens of Kentucky, and Richard, H. H., and Mary Christmas, the only real defendants, are citizens of the same State. The controversy between these parties arises out of the question, whether Richard had made to the complainants, or to others for their benefit, an equitable assignment of the three original notes given by Lyons to Richard on the purchase of certain real estate. That controversy is for the first time brought to the notice of the court by the bill filed in this case. The court, therefore, by the language of the Constitution, had no jurisdiction of the controversy, unless the bill was a bill not original; that is to say, unless it was ancillary to a case of which it had jurisdiction. Then, indeed, as of a matter but ancillary to the former case, it would have jurisdiction, though it would not have it as of an original proceeding. This is all hornbook law.

Now, the bill here was an original bill, for it related to

matters not before litigated in the court by the same persons, standing in the same interest.

The matter of this equitable assignment was never litigated before in the court, nor was the bill an addition to, or a continuance of, an original suit. It is therefore an original bill. Cases on the subject in this court are, *Logan* v. *Patrick,** *Sims* v. *Guthrie,†* *Dunn* v. *Clark,‡* *Clark* v. *Mathewson,§* and lately, *Jones* v. *Andrews.‖* In all these cases the suit was sustained irrespectively of citizenship; but in each the suit was but a continuation of a former controversy and between the same parties. The same is true of *Dunlap* v. *Stetson,¶* a circuit case. The absence of jurisdiction being thus clear, the decree must on that ground be reversed and the bill dismissed. This being so, the court cannot properly pass upon the other point. Any decision of it would be extrajudicial.

But if the court thinks that the jurisdiction exists, the case is clear on merits. As far back as Lord Hardwicke's time, and in Ridgway's Cases,** in a suit where A. filed a bill against B., and one of his debtors, praying that the court would stay the money in the debtor's hands, and not suffer it to be paid to B., for fear of his misapplying it, B. having promised to pay the complainant's demand out of such specific debt, Lord Hardwicke refused to hear any argument on the question. He dismissed the bill, saying:

"If a debtor promises to pay his creditor out of the money to be recovered in a certain suit, and on the faith of this promise the creditor forbears to sue him, this creates no specific lien on the money recovered."

And this same doctrine, declared frequently since, is thus presented with emphasis of late times in the Leading Cases in Equity :††

"It is necessary, moreover, in order to constitute an assignment, either in law or in equity, that there should be such an

---

* 5 Cranch, 288.  † 9 Id. 19.  ‡ 8 Peters, 1.
§ 12 Id. 170.  ‖ 10 Wallace, 331.  ¶ 4 Mason, 349.
** Page 194.  †† Vol. ii, part 2, p. 233, Hare & Wallace's Notes.

actual or constructive appropriation of the subject-matter assigned as to confer a complete and present right on the assignee, even when the circumstances do not admit of its immediate exercise. A covenant on the part of a debtor, to apply a particular fund in payment of the debt as soon as he receives it, will not operate as an assignment, for it does not give the covenantee a right to the funds, save through the covenantor, and looks to a future act on his part as the means of rendering it effectual."

Speaking of this extract, the Supreme Court of Ohio says: *

"This rule seems to be well sustained and settled by the cases cited in its support."

*Mr. Hubley Ashton, contra:*

Of course, if there is no jurisdiction the case is at an end, and no question of merits arises. But there is jurisdiction, for a bill of the character of the one filed in this case, to enjoin proceedings pending in the Circuit Court, and to prevent a wrongful use of the proceedings, is not regarded as an original suit; and non-resident plaintiffs in the proceedings sought to be enjoined, or as to which relief is sought, being in court as parties, may be made such by the bill. This court, in *Freeman* v. *Howe,*† correct the case of *Dunn* v. *Clark,* relied on by Mr. Phillips. Referring to the opinion given in that case, they say:

"It would seem, from a remark in the opinion, that the power of the court upon the bill was limited to a case between the original parties to the suit. This was probably not intended, as *any party may file a bill whose interests are affected by the suit at law.*"

The jurisdiction exists then, and question of merits does arise.

From the best authorities on the subject of equitable assignments,‡ the following propositions may be extracted:.

---

* Christmas *v.* Griswold, 8 Ohio, N. S. 563.      † 24 Howard, 460.

‡ See notes to the case of Row *v.* Dawson, 1 Vesey, 331, in Leading Cases in Equity, 3d American edition, vol. 3, pp. 357–8; Raymond *v.* Squire, 11 Johnson, 47; People *v.* Tioga, 19 Wendell, 73; 1 Strobhart (Equity), 47; 6 Leigh, 534; Knapp *v.* Alvord, 10 Paige, 205.

1. Anything which shows an intention to assign on the one hand, and from which an assent to receive on the other may be inferred, will operate as an assignment if sustained by a sufficient consideration.

2. No writing or particular form of words is necessary if the consideration be proved, and the meaning of the parties apparent.

3. The obligation to indemnify sureties is a continuing obligation, and a sufficient consideration for a transfer or conveyance.

The object of the parties here is apparent. It was to place Yerger and Anderson in the position of sureties with specific indemnity. Christmas being under an express obligation to do so, and having obtained the surrender of the first indemnity on an understanding that he was to replace it by something equivalent, Yerger accepted it, and notified Lyons of the understanding with Christmas. It was a power of attorney coupled with an interest, a designation of the fund as one to be used by the surety with power to use it, and notice to the debtor of that power and its object.

There can be no doubt as to the effect of this pledge as between the parties. A court of chancery could enforce it against Christmas, and against any party occupying the position of H. H. Christmas, who took the note long after it was due, and for a pre-existing debt and not as actual payment. A party taking securities after maturity takes the title of the vendor subject to all equities by which it is affected.* Then, as to Mrs. Christmas, the whole matter was conducted by Richard Christmas, who had, *as her agent, full notice.*

The right and justice of the claim of the sureties to have this debt applied to their relief is clear. The opposing title of the son and wife of Richard Christmas looks like a fabricated title. No fair-minded person can read the letter of October 23d, 1865, in which the elder Christmas declares that he has ever held the note " sacred for the payment of this

---

* Texas *v.* White, 7 Wallace, 735.

Recapitulation of the case in the opinion.

debt," that he " has it now in New York endeavoring to sell it in order to pay this debt," and if not sold " will send it to Russell," and not feel a disposition to sustain the decree below, unless the claims of Mrs. Christmas and the son are clear, which they are not.

*Reply :* The language cited from *Freeman* v. *Howe et al.* was extra-judicial; dictum merely. It is unsupported by the two cases to which it refers, to wit: *Pennock* v. *Coe*,\* and *Guy* v. *Tide-water Canal.*† The question now under consideration did not directly arise, nor is it even remotely referred to in the argument.

Mr. Justice SWAYNE delivered the opinion of the court.

Two questions have been argued and are presented for our consideration. They are:

Whether the residence of the parties as disclosed in the record was such as gave the court below jurisdiction of the case? and

Whether William Yerger and Warren P. Anderson had such a lien, by equitable assignment, upon the fund in controversy as warranted the decree appealed from.

The solution of these questions requires a brief statement of the case as it appears in the record

Richard Christmas held three notes of Lyons payable to himself, all dated November 30th, 1859, each for the sum of $16,666.50, and payable respectively, one, two, and three years from date. Richard Christmas assigned and delivered them to his son, H. H. Christmas. H. H. Christmas made a compromise with Lyons whereby these notes were delivered up to the maker, and he executed to H. H. Christmas, in their stead, two notes, each for $8339.90, one payable December 1st, 1866, the other February 1st, 1868. Both were secured by a mortgage upon real estate. H. H. Christmas hypothecated one of the notes to Payne, Huntington & Co., of New Orleans, to secure a debt which he owed them.

---

\* 23 Howard, 117.                    † 24 Id. 262.

Suits upon the notes were instituted in the court where this bill was filed. The suit upon one of the notes was in the name of H. H. Christmas for his own use. The other was in his name for the use of Payne, Huntington & Co. A bill was also filed in the same court to foreclose the mortgage. It set out the rights of H. H. Christmas and of Payne, Huntington & Co. touching the notes. On the 1st of May, 1868, H. H. Christmas entered into an agreement with Mary Christmas, whereby in consideration of her assuming the payment of the debt due to Payne, Huntington & Co., he transferred to her the note hypothecated to them. Payment to them was made out of her means, and they delivered up the note. The foreclosure bill was amended by the substitution of her name for that of Payne, Huntington & Co., and an application, which is still pending, was made for the like substitution in the suit at law upon the note transferred to her. A judgment was recovered upon the other note.

In this condition of things the complainants filed their bill. It alleges the following state of facts: Russell, now deceased, for himself and the use of the complainants other than his executors, recovered a judgment against Richard Christmas, which was taken to the Supreme Court of the United States by a writ of error. William Yerger and Warren P. Anderson became his sureties in the error bond. The judgment was affirmed by this court, and the sureties thus became liable on their bond. The sureties executed the bond upon a promise of indemnity by their principal. He subsequently gave them a lien for this purpose upon one of the original notes of Lyons. It is claimed that this lien attaches to the notes taken in substitution for them. Richard Christmas is hopelessly insolvent, and has gone into bankruptcy. The complainants seek to be subrogated to the rights of the sureties and to enforce the alleged lien for the satisfaction of the judgment. The bill alleges that the complainants are all residents of the State of Kentucky; that the defendants, Richard, H. H., and Mary Christmas are all residents of the same State, and that the defendants, Yerger

and the legal representatives of Anderson and Lyons, are residents of the State of Mississippi.

No party to the original suits has had any connection with the filing of this bill. Lyons, the defendant in these suits, asks no protection against them. He did not answer the bill, but allowed a decree *pro confesso* to go against him. The case which the bill makes is wholly outside of the litigation in the suits at law. It is alien to everything involved in those proceedings. It alleges a lien upon the liability of Lyons, prior and paramount to the right of H. H. Christmas as plaintiff for his own benefit in one of the suits at law, and to that of Mary Christmas as *cestui que use* in the other. The controversy is wholly between them and the complainants. The bill is essentially an original one. In no sense can it be held to be auxiliary or ancillary to the action at law. Can such a bill be maintained?

The Constitution, article 3, limits the judicial power of the United States to " controversies between citizens of different States." There are exceptions which do not affect this case, and need not, therefore, be more particularly adverted to. The act of 1789 *. declares that " no civil suit shall be brought . . . against an inhabitant of the United States by any original process in any other district than that whereof he is an inhabitant or in which he shall be found at the time of serving the writ." The act of 1839 † authorizes the voluntary appearance of parties in regard to whom there is no inherent and insuperable jurisdictional objection, in suits elsewhere than in the district in which they reside, or in which they may be found.

In the light of these provisions it is clear that this bill cannot be maintained as an original one; and we think it equally clear that it cannot be maintained as an auxiliary or supplementary bill, because it is not one of that character. The case falls clearly within the rules laid down by this court, upon the subject of parties, in *Shields* v. *Barrow.*‡

---

* § 11, 1 Stat. at Large, 78.      † 5 Id. 321.      ‡ 17 Howard, 130.

The several adjudications of this court upon the point under consideration have been referred to by the counsel on both sides.* Those cases call for a few remarks. In the five earliest cases the defendants in the suits at law were complainants in the suits in equity. In one of them, *Dunn* v. *Clark*, a judgment had been recovered against Dunn and others in the Circuit Court for the District of Ohio. The plaintiff, who was a citizen of Virginia, had died. The defendants filed their bill in the same court, praying for an injunction and a conveyance of the premises. All the complainants and all the defendants in the chancery suit were citizens of Ohio. This court said: "The injunction bill is not considered an original bill between the same parties as at law, but if other parties are made in the bill and different interests involved, it must be considered to that extent at least an original bill, and the jurisdiction of the Circuit Court must depend upon the citizenship of the parties." It was further said, that as there appeared to be matters of equity in the case which could be investigated by a State court it would be reasonable and just to stay all proceedings on the judgment until the complainants should have time to seek relief from a State tribunal. The decree of the Circuit Court was modified accordingly.†

In *Freeman* v. *Howe*, it appears that White had sued in the Circuit Court of the United States for Massachusetts and attached certain property of the defendant. The property was taken from the possession of the marshal by a writ of replevin issued from a State court. The marshal appeared in that court and set up as a defence that he held the property when it was taken from him, by virtue of process issued from the Circuit Court. This defence was overruled and the judgment against him was affirmed by the Supreme Court of the State. That judgment was reversed by this

---

* Logan *v.* Patrick, 5 Cranch, 288; Simms *v.* Guthrie, 9 Id. 19; Dunn *v.* Clark, 8 Peters, 1; Clark *v.* Matthewson, 12 Id. 170; Dunlap *v.* Stetson 4 Mason, 349; Freeman *v.* Howe, 24 Howard, 450; Jones *v.* Andrews, 10 Wallace, 331.

† See also Williams *v.* Byrne et al., Hempstead, 473.

court upon the ground that the Circuit Court, having first acquired possession of the *res*, could not be deprived of that possession until the litigation there was brought to a close. This was the only point involved in the case and the only one decided. The learned judge who delivered the opinion remarked that the marshal's possession might have been protected by a proceeding in equity. In that connection he made certain remarks which were entirely proper as regards the facts of the case before him, but it is a misapprehension to suppose they are of universal application or that they can affect a case of the character of the one under consideration.*

The last of this series of cases is *Jones* v. *Andrews.* Andrews, a citizen of New York, recovered a judgment in the Circuit Court of the United States for the Western District of Tennessee against Reed and Bryson, by default. For the satisfaction of that judgment he sued out a writ of garnishment to seize in the hands of the judgment debtors the notes to them of Jones, a citizen of Georgia. Thereupon Jones filed a bill in equity in the same court, wherein he alleged that Reed & Bryson had transferred the notes to Andrews in payment of their debt to him; that they owed Andrews nothing when he sued them; that the judgment was obtained by collusion, and that the writ of garnishment was a contrivance to enable Andrews to avoid the necessity of a direct suit against Jones, and to deprive Jones of a valid defence which he had against the notes. Andrews appeared in the case voluntarily. This court held that the bill was well brought as an original one under the act of 1839, and also as one incidental and auxiliary to the garnishment proceeding. On both points the judgment was correctly given. According to the face of the bill Jones was to be as much affected by the garnishment proceeding, and a bill was as necessary for his protection and to the due administration of justice as if he had been a party to the record in the garnishment case.

The course indicated in *Dunn* v. *Clark* should have been

---

* Buck *v.* Colbath, 3 Wallace, 334.

pursued in this case. The bill should have been filed in the proper State court and an application should have been made to the Circuit Court to hold the proceeds of the suits at law under its control until the right to them should have been settled by an adjudication of the State court between the conflicting claimants. There would be no more inconsistency or embarrassment in these different proceedings than there is where a mortgagor resorts in different courts to the several remedies which he is entitled to pursue at the same time. He may file a bill to foreclose in one court, sue at law to recover his debt in another, and bring an action of ejectment to recover possession of the mortgaged premises in a third. Each of such courts will see in the end that its process is not abused and that no wrong is done to the debtor.

The evidence relied upon to support the alleged lien, consists, so far as it is necessary to consider it, of letters from Richard Christmas to Yerger, written before Richard transferred to H. H. Christmas the notes originally given to Richard by Lyons. In a letter of the 25th of October, 1865, Richard said: "I feel great uneasiness about your liability on the bond in suit of Russell against me. I have ever held the Lyons note as sacred for the payment of this debt, and have it now in New York, endeavoring to sell it, with the mortgage, to pay this debt; I expect to hear from it daily. If not sold I will send it to you as soon as I return." On the 14th of February, 1866, he wrote: "I could not safely send you the Lyons note by mail as it is payable to me or bearer—hence if lost might put me to much trouble." On the 21st of the same month he said: " You may rest assured I will protect you with the Lyons note." In the next letter, of the 12th of May following, he announced the transfer of the notes to H. H. Christmas, and said: "In this I hope I have not lost sight of my purpose to protect you." These letters contain no words of transfer, and nothing which by construction or otherwise can have any effect in that way. At most they are only evidence of a promise to pay the

judgment, if affirmed, out of the proceeds of one of the notes, and to send the note, if not sold, to Yerger.

An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intent to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund—any authority to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee. The transfer must be of such a character that the fundholder can safely pay, and is compellable to do so, though forbidden by the assignor. Where the transfer is of the character described, the fund-holder is bound from the time of notice.\* A bill of exchange or check is not an equitable assignment *pro tanto* of the funds of the drawer in the hands of the drawee.† But an order to pay out of a specified fund has always been held to be a valid assignment in equity and to fulfil all the requirements of the law.‡ These views are fatal to the claim asserted by the complainants in behalf of the sureties on the bond.

Upon both the grounds which have been considered, the decree of the Circuit Court must be REVERSED, AND THE BILL DISMISSED. The cause will be remanded with directions to

PROCEED ACCORDINGLY.

---

\* Rogers *v.* Hosack, 18 Wendell, 334; Hoyt *v.* Story, 3 Barbour's Supreme Court, 263; Dickenson *v.* Phelps, 1 Id. 461; Clayton *v.* Faucet, 2 Leigh, 19; Hopkins *v.* Beebe, 2 Casey, 85; Hall *v.* Jackson, 20 Pickering, 194.

† Copperthwaite *v.* Sheffield, 3 Comstock, 243.

‡ Knapp *v.* Alvord, 10 Paige, 205; Yeates *v.* Groves, 1 Vesey, Jr., 280; Row *v.* Dawson, 1 Vesey, 331; Morton *v.* Naylor, 1 Hill, 585.