## UNION INS. Co. *v.* GLOVER and another.

*(Circuit Court, D. Maine.* September, 1881.)

1. EQUITABLE ASSIGNMENTS—BILL OF INTERPLEADER.

An assignment of a part only of a particular fund is valid in equity.

After a loss occurred, the holder of a policy of insurance gave an order on the company for a specific sum, which was less than the total amount of the policy and less also than the amount due from the company to the assured on this loss. The party named in the order brought an action against the company in a state court in the name of the assured, and the assured subsequently brought a similar suit in this court. While both actions were pending, the insurance company filed a bill of interpleader against the parties to these suits, to have their rights as to the amount due on the policy ascertained. *Held,* that the court can determine the rights of the parties; and, further, that the order constituted an equitable assignment of the amount named in it.

In Equity.

*A. P. Gould,* for E. K. Glover.

*A. A. Strout* and *W. Gilbert,* for C. C. Glover.

*F. A. Wilson,* for the Insurance Company.

Fox, D. J. On the twentieth day of April, 1878, the complainant, by policy No. 6,305, insured the sum of $2,500 on brig J. M. Wiswell for one year; loss payable to C. C. Glover, who was the master and owner of nine-sixteenths of the brig.

Within the year the vessel met with disaster in the English channel, and, for the benefit of all concerned, was beached near Dartmouth. She was subsequently taken to that port and there sold. Controversies in relation to the general average arose between the master and the owners of her cargo, which are, it is stated, still pending in the courts of England. In May, 1879, C. C. Glover returned to Rockland, in this state, where his brothers, E. K. and W. H. Glover reside, each of whom owned one-eighth of said brig. In July, Charles was desirous of obtaining funds with which to return to England, as he claimed, to pay bills there incurred about the general average claims. He applied to his brothers to advance him $1,000 on that account. William had always refused to join in the prosecution of the general average claims, and declined to advance funds for that purpose, but was willing to loan Charles $1,000, on receiving as security for its payment an assignment from Charles of the policy of insurance. Such an instrument was drawn in the usual form, July 7th, and a power of attorney was given by Charles to E. K. on the same day, authorizing him to collect the insurance from the company. Charles afterwards refused to execute the assignment of the policy to William, and William declined to loan him the $1,000.

On the ninth day of July, Charles received from E. K. Glover $600, which

had been obtained from a bank in Rockland on the note of Charles, payable to and indorsed by William H., E. K. having previously indorsed it, whereby, by the decisions in Maine, he became a joint promisor with Charles on the note. At the same time Charles received from E. K. a bill of exchange on the Barings for $400. The note of $600 was paid at its maturity by E. K. Glover, who also repaid to William H. Glover & Co. the amount of the London draft which had been obtained by W. H. Glover & Co. on account of E. K. Glover. At the time Charles received these sums he gave to E. K. Glover an order on the complainants, which is as follows:

"*Union Insurance Company:* Please pay to E. K. Glover, of Rockland, $1,000, from proceeds of policy of insurance No. 6,305, in my favor, for $2,500, on brig J. M. Wiswell, dated April 14, 1878.

"Rockland, July 9, 1879.                    .                    C. C. GLOVER."

E. K. Glover has since commenced an action at law in the name of C. C. Glover against the company on this policy, and the same is now pending in the supreme court of Maine, Knox county. C. C. Glover subsequently instituted a similar suit in this court, and the same is here pending. The amount to be received on said policy is by agreement fixed at $1,500, and the insurance company has filed this bill of interpleader against C. C. and E. K. Glover, that their respective rights as to this amount may be ascertained and determined.

E. K. Glover insists that he is entitled to $1,000, and interest upon this amount, by virtue of the order of July 9th and of the delivery to him by C. C. Glover of the duplicate policy, the original being then believed to be lost. E. K. Glover testifies that on July 9th the $1,000 then received by C. C. Glover, in cash and bill of exchange, was a loan made by him to C. C. Glover, on condition that he would secure its payment by the order and would send him the duplicate policy, which was then at Cambridgeport; that within a few days he received by mail the policy, in compliance with such agreement. He denies that the $1,000 was raised on joint account, to be used by C. C. Glover for the benefit of the owners of the brig in adjusting the general average charges in England, and he asserts that from the first he, by his letters to Charles, which are in evidence, refused to have any concern in the general average claim, and so repeatedly informed Charles after his return to Rockland, telling him if he carried on the controversy he must do it at his own expense, and he was welcome to everything that should be realized therefrom; that he, E. K., would make no claim to any part of it and would have nothing to do with it; that the note of $600 was paid by him, and also the amount advanced by William H. Glover & Co. for the bill on Barings. These statements of E. K. Glover are in all respects corroborated and sustained by the testimony of W. H. Glover.

On the other hand, while C. C. Glover insists that he did not borrow of E. K. the $1,000, but that it was raised by him and his brothers, to be by him expended in England in defraying the charges and expenses incurred about the general average claims, from which he believed the owners of the brig would receive a large amount from the owners of the cargo, he is utterly unable to give any explanation of his order for $1,000. He is inclined to

admit that it bears his signature, but he testifies that he has not the least recollection of it, and asserts that, if he did give it, it was that E. K. Glover might have authority from him to collect $1,000 from the company if it declined to pay a total loss, but was ready to pay that sum as for a partial loss. This explanation is of no moment, as on the seventh of July, two days prior to the order, C. C. Glover had given E. K. a power of attorney, which authorized him to collect the policy, and under which he was fully empowered to receive any sum the company might be willing to pay, although not the full amount of the policy.

Mrs. Sherman, a sister of C. C. Glover, with her husband, have been introduced as witnesses by him, but the court does not find in their testimony anything which would justify the court in discrediting the sworn statements of both E. K. and William H. Glover that the $1,000 was a personal loan made to C. C. Glover by E. K. Glover, the payment of which was secured by the order on the company and the delivery of the duplicate policy. The counsel of C. C. Glover insist that if such should be the finding of the court, still E. K. Glover was not thereby authorized to maintain an action on the policy in the name of C. C. Glover and collect from the company the amount so loaned to C. C. Glover; that the order was not an assignment of the policy and of whatever might be collected therefrom, but was for a portion only of the fund, and did not create an equitable lien in favor of E. K. Glover for the amount of the order.

In support of his views the learned counsel relies on *Palmer* v. *Merrill,* 6 Cushing, 287.

That case was an action at law to recover from an administrator a portion of the amount by him collected from an insurance company on a policy of insurance on the life of defendant's intestate for $1,000, a portion of this sum, $400, having been assigned to the plaintiff by an order written on the policy, but the policy had always been retained by the intestate. It did not appear that plaintiff, prior to the death of the insured, had any knowledge of the assignment or had ever seen the policy, so that there was never any delivery to him of the policy or of the assignment. The court hold that the action could not be maintained, but the case is essentially different from the present, which is a bill in equity, by the holder of the fund, against the assignor and assignee, to whom the policy and order were both delivered.

The question now for decision is not whether E. K. Glover can maintain his action in the state court to recover from the insurance company the $1,000 loaned by him to C. C. Glover or the full amount due on the policy, but it is whether, in this bill of interpleader brought by the company, the court will determine the equitable rights of the respective parties, and whether E. K. has acquired

such a lien upon the fund as will be enforced and protected by a court of equity.

In Story, Equity, 1044, the learned author says: "A trust would be created in favor of the equitable assignee of the fund, even if the assignment is of a part only of the amount, and would constitute an equitable lien upon it."

In *Christmas* v. *Russell*, 14 Wall. 84, the language is: "An order to pay out of a specified fund has always been held to be a valid assignment in equity, and to fulfil all the requirements of the law."

The case of *Savings Bank* v. *Adae*, 8 FED. REP. 108, is in principle identical with the present. A party drew his check on a bank in favor of a creditor, and next day failed. The check was presented for payment and was refused, although when drawn the drawer had on deposit to his credit in the bank more than its amount. The bank brought a bill of interpleader against the holder of the check and the assignee in insolvency of the drawer, and it was held that the check was an equitable assignment of that amount, and its holder acquired a lien therefor and was entitled to its payment.

These authorities, together with many others of a similar import, sustain the lien of E. K. Glover on this policy and its proceeds as security for the payment of the loan of $1,000 made by him to C. C. Glover, and it is so decreed.