## IN THE MATTER OF THE PETITION OF LEWERS & COOKE, LTD.

APPEAL FROM COURT OF LAND REGISTRATION.

ARGUED NOVEMBER 18, 1907.   DECIDED DECEMBER 11, 1907.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

LIENS—*creation of equitable lien by express contract.*

An agreement by the grantees of extensive real and personal property to pay an annuity to a charitable institution from all the property conveyed to them creates no equitable lien on the real estate.

### OPINION OF THE COURT BY BALLOU, J.

This is an appeal by the Kapiolani Home of the Hooulu and Hoola Lahui Society from a decree of the court of land registration registering the title of Lewers & Cooke, Ltd., to a parcel of land free from an equitable lien claimed thereon by appellant.

On February 10, 1898, Queen Dowager Kapiolani conveyed to David Kawananakoa and Jonah Kalanianaole one hundred and twenty-four separate parcels of real estate including the one in controversy and all her personal property including bonds and stocks; the grantees in consideration thereof agreeing to pay her $1000 a month during her lifetime and to assume and pay all of her debts and obligations of every kind not exceeding $50,000.

On the same day the parties executed a separate agreement reciting the conveyance by Queen Kapiolani of all her property, her desire to donate the sum of $10,000 to the Kapiolani Home, of which she was president, and the propriety of her beneficiaries carrying out this intention. David Kawananakoa and Jonah Kalanianaole thereupon agree and covenant

that they will give and pay to the said Home the sum of $10,000 as a gift, donation and aid from Queen Kapiolani, said money to be paid at the rate of $100 a month. Then follows a clause of which the translation of the original Hawaiian is as follows:

"And both parties hereto mutually agree that this sum of ten thousand dollars ($10,000) be made a debt for Her Majesty Queen Kapiolani and be paid from all the property conveyed by said Queen Kapiolani to the said parties of the first part."

The lien claimed arises, if at all, out of an express contract, the principles of which are stated in a passage often cited by the courts:

"The doctrine may be stated in its most general form, that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, or whereby the party promises to convey or assign or transfer the property as security, creates an equitable lien upon the property so indicated, which is enforceable against the property in the hands not only of the original contractor, but of his heirs, administrators, executors, voluntary assignees, and purchasers or encumbrancers with notice.  * * *  In order, however, that a lien may arise in pursuance of this doctrine, the agreement must deal with some particular property, either by identifying it, or by so describing it that it can be identified, and must indicate with sufficient clearness an intent that the property so described, or rendered capable of identification, is to be held, given, or transferred as security for the obligation." Pom. Eq. Juris., Sec. 1235.

While the language in the case at bar is not wholly free from doubt we cannot say that it indicates with sufficient clearness an intention to hold the real estate as security for the payment of the obligation. The property, which was of considerable extent, and included personalty as well as realty, had been transferred by the queen without any express charge even for security of the payment of her own annuity and debts, and the document now in question appears to have been framed

with the general intent of putting this donation upon the same footing as a debt.

It has been frequently held that an agreement to pay a debt or other obligation out of a particular fund is insufficient to create an equitable lien. *Christmas v. Russell,* 14 Wall. 69; *Trist v. Child,* 21 Wall. 441. Language like this is usually used in connection with a fund in the hands of a third person or to be received in the future by the obligor, but the same reasoning, with perhaps less force, would apply to real property already in the hands of the obligor. Cases which construe the language of wills with reference to the question of charging legacies upon the real estate involve too many other considerations to make them of assistance in this case. See Pom. Eq. Juris., Sec. 1247. In this case the parties have designated the source from which the payments are to be made, possibly to avoid confusion arising from the statement that the sum was a debt of the queen's, but this does not fairly imply that the entire corpus of the real estate was to be encumbered by a charge.

The decree appealed from is affirmed.

*C. H. Olson* (*Holmes & Stanley* with him on the brief) for Kapiolani Home.

*D. L. Withington* (*Castle & Withington* on the brief) for Lewers & Cooke, Ltd.