## In re WILSON.

(District Court, M. D. Pennsylvania. April 1, 1912.)

No. 1,695.

1. BANKRUPTCY (§ 351*)—CLAIMS—PARTNERSHIP—DISSOLUTION AGREEMENT—ORAL PROVISIONS.

Where, as a part of an agreement for the dissolution of a partnership, it was stipulated that the continuing partner should furnish the outgoing partner with a release from liability from certain creditors of the firm, and that certain book accounts should be collected and the proceeds used to pay the other creditors, but the agreement as to the appropriation of such accounts was not contained in the dissolution agreement, and the accounts were not so applied, the outgoing partner was not entitled to compel such application as against the creditors of the firm in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 563, 564; Dec. Dig. § 351.*]

2. BANKRUPTCY (§ 318*)—DISSOLUTION AGREEMENT—PARTNERSHIP ASSETS—APPLICATION.

Where an oral agreement between partners incident to dissolution provided that firm accounts should be collected and the proceeds applied to pay the indebtedness of the firm, but there was no appropriation of the same pro tanto by transferring them, or otherwise, in such a manner as to take them out of the hands of the parties, or authorizing the holder to pay the amount directly to the creditor, without further intervention or concern on the part of the partnership, the provision of the contract was executory only, and unenforceable as against creditors in bankruptcy proceedings against the continuing partner.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 481, 482; Dec. Dig. § 318.*]

In the matter of Harry B. Wilson, bankrupt. On certificate for review of a referee's order disallowing a claim for preference. Affirmed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

W. H. Sponsler, for the petition.

Walter Rice, Charles H. Smiley, and James M. Barnett, opposed.

WITMER, District Judge. The petitioner, Thomas H. Milligan, protests against making a part of the general fund for distribution the amount ($422.49) collected of the book accounts of Thomas H. Milligan & Co. by the bankrupt's trustee, and asks that the same be turned over to John Lucas & Co. and the Keystone Farm Machinery Company in liquidation of their accounts against the said company, to which it is claimed the same was dedicated and pledged under the terms of the dissolution of the partnership company of which the bankrupt and the said Thomas H. Milligan were partners.

It appears that the partners, trading as Thomas H. Milligan & Co., having been engaged in the general hardware business, on August 2, 1909, by mutual consent and agreement in writing dissolved the partnership, transferring the business, stock in trade, all bills and accounts receivable, and the assets of the partnership, in general, to the partner H. B. Wilson, the bankrupt; the latter, as part consideration for such transfer, agreeing to secure for the other partner releases from certain debts due and owing by the partnership, and to pay and extinguish all remaining debts of the said firm existing on the 25th day of February, 1909, or since.

The petitioner, however, does not rest his contention upon the written agreement. He insists that some time prior to its date, and since February 25, 1909, it was orally agreed between the partners that Wilson should furnish Milligan a release from certain creditors, discharging him (Milligan) from all liability as a partner, and as to other creditors the same were to be paid by the collection of the book accounts due the said partnership from divers persons and companies, and that by the terms of this verbal arrangement or agreement the said accounts were set aside for that purpose and so dedicated.

It will be noted that the promise of Wilson to furnish releases and discharges of Milligan from certain of their creditors was made a part of the written dissolution agreement. Accounting, therefore, for the failure to incorporate the later portion of this alleged oral agreement, referring to the setting aside and dedication of the book accounts to the liquidation of certain accounts owing by the partnership, including those represented by the petitioner, it is said that:

"At the date and immediately prior to the agreement in writing, Wilson informed Milligan, through his attorney, that he had collected of the book account assets so dedicated, and had paid off the accounts due from the partnership, which the petitioner supposed liquidated and extinguished all debts of the firm, except those from which releases were to be obtained, and, depending on this statement, the firm was dissolved under a written agreement of the 2d day of August, 1909."

Allowing the petitioner all that he claims, it appears clearly established that by the terms and provisions of the later agreement in writing all of the book accounts receivable were transferred to the bankrupt including those since collected by the trustee, and reserving none. This conclusion is furthermore strengthened by the presumption that

the entire understanding and agreement between the parties at the date of the instrument merged in the writing representing their mutual covenants regarding the subject-matter.

[1] That the provision concerning the alleged oral agreement failed from being incorporated in the writing through the deception or misrepresentation of Wilson, one of the parties, and thus permitting the oral agreement to remain in force would not avail the petitioner if established. If the controversy were one between the parties to the agreement, and not between them and their creditors, it might be, different. After entering into a solemn writing, publishing the terms of the dissolution, and the continuing partner falls into bankruptcy, it does not come with favor, on contest with their creditors, for the other partner, having taken a cash consideration, to say that he was deceived into the writing, and, for the purpose of saving himself from its consequences, attempt to establish a verbal collateral agreement by its very nature shunned by the law. If Milligan was deceived by Wilson, what can be said for their creditors? The loss, if any, by reason of the transaction, should not be visited upon the stranger. "Equity does not favor secret agreements, at the expense of those who neither know nor have opportunity of knowing of their existence." Com. v. Brenneman, 1 Rawle (Pa.) 311.

[2] However, the oral agreement, if favored, and considered as established, could only be regarded in character as an executory contract, and not as an actual transfer or assignment of specific accounts, or the proceeds thereof, there having been no appropriation of the same pro tanto, by transferring them or otherwise, in such manner as to take them out of the hands of the parties, and authorizing the holder to pay the amount directly to the creditor, without further intervention or concern to the debtor. Trist v. Child, 21 Wall. 441, 22 L. Ed. 623; Christmas v. Russell, 14 Wall. 69, 20 L. Ed. 762. If this had been accomplished—that is, a complete assignment or transfer of specific accounts effected—it is not unfair to presume that these accounts would not again have found a place, or been considered, as an item in the writing that was finally entered into between the parties.

There are other reasons supporting the conclusion reached, to which I will not allude. The findings, conclusion, and order of the learned referee are affirmed.