Jake DUPREE, Appellant,

v.

Merlin QUINN et al., Appellees.

No. 6878.

Court of Civil Appeals of Texas.

Texarkana.

April 26, 1956.

Rehearing Denied May 17, 1956.

Fulton, Hancock & McClain, Hollie G. McClain, Gilmer, for appellant.

Florence, Florence & Garrison, Gilmer, Albert B. Tarbutton, Jr., Lone Star, C. M. Winkle, Pittsburg, Woodrow H. Edwards, Mt. Vernon, for appellees.

DAVIS, Justice.

On November 14, 1953, Jake Dupree recovered judgment against Merlin Quinn in the District Court of Upshur County, Texas, for the sum of $5,464.80, plus interest at the rate of 6% per annum from date of judgment, and costs of suit; also for a foreclosure of a chattel mortgage lien upon certain personal property pledged by Quinn to Dupree to secure the debt sued upon. The personal property was sold by the sheriff of Upshur County under order of sale for the sum of $2,000, which sum was credited upon the judgment.

On January 6, 1954, Merlin Quinn executed what has been designated as an assignment of funds in favor of the Pittsburg National Bank of Pittsburg, Texas. Omitting the caption and acknowledgment, the instrument reads as follows:

"* * * Whereas, I, Merlin Quinn, a resident citizen of Upshur County, Texas, have contracted with the Lone Star Steel Company of Lone Star, Texas, to haul, or transport, via automobile trucks, ore from the field, or mines, to the Lone Star Beneficiation Plant, and am to receive the sum of Thirty-eight (.38) cents per long ton for each and every ton hauled by him; and,

"Whereas, I, Merlin Quinn, am indebted to the Pittsburg National Bank of Pittsburg, Texas, for trucks, automobile accessories, borrowed money, etc., and may become indebted to it in various sums on various days and dates hereafter; and,

"Whereas, the Pittsburg National Bank of Pittsburg, Texas, has requested that I, Merlin Quinn, secure the payment of said indebtedness over and above the securities now held by it;

"Now, Therefore, I Merlin Quinn, for and in consideration of securing my indebtedness due the Pittsburg National Bank of Pittsburg, Texas, as of this date, as well as in order to secure the payment of any indebtedness I may hereafter owe to the Pittsburg National Bank of Pittsburg, Texas, do hereby unconditionally transfer, assign and set over to the Pittsburg National Bank of Pittsburg any and all sums of money that may be due and owing to me by the Lone Star Steel Company under and by virtue of my contract with it, to the Pittsburg National Bank of Pittsburg, Texas, and hereby authorize and direct the Lone Star Steel Company, its agents, servants and employees to forward any and all sums of money due and payable to me to the Pittsburg National Bank of Pittsburg, Texas; that said money to be forwarded by the Lone Star Steel Company to the Pittsburg National Bank of Pittsburg, Texas, for me is due and payable at the present on the 10th and 25th of each month.

"I hereby agree to hold harmless the Lone Star Steel Company for any sum or sums of money paid by it to the Pittsburg National Bank for my credit.

"Witness my hand this 6th day of January, 1954.
"/s/ Merlin Quinn. * * *"

On March 5, 1954, Dupree sued out a writ of garnishment against Lone Star Steel Company, hereinafter referred to as Lone Star, upon the balance of his judgment against Quinn. Lone Star filed an answer to the writ served upon it in which it denied being indebted to Quinn or having effects in its possession belonging to him, but set out in its answer that it had in

its possession a total of $1,963.20 that had accrued under its contract with Quinn and that the money was due to the Pittsburg National Bank of Pittsburg, Texas, by virtue of the foregoing assignment. The Pittsburg National Bank, hereinafter referred to as the Bank, filed a plea of intervention, claiming the funds under the alleged assignment. Dupree controverted the answer of Lone Star, answered the plea of intervention and challenged the validity of the assignment.

On April 5, 1955, Dupree sued out another writ of garnishment against Lone Star upon the balance of his judgment against Quinn. To this writ Lone Star answered, denying that it was indebted to Quinn or had any effects in its possession belonging to him and set out that it had in its possession at that time funds that had accrued to Quinn under the contract in the sum of $3,084.91, but said that said funds were the property of the Bank under the assignment. Dupree controverted this answer and the cause was transferred to Morris County, the county where Lone Star is situated, for trial.

Quinn also answered each writ of garnishment.

During the pendency of the suit, the U. S. government filed a lien against the funds in possession of Lone Star for the sum of $923.90 for transportation tax. It was admitted by all parties that said lien was a preference lien.

Trial was to the court without a jury, and judgment was rendered allocating the $3,084.91, which the court found belonged to the debtor Quinn, as follows: $923.90 plus interest, to the U. S. government; $1,274.18 to the Pittsburg National Bank; $125 to the Lone Star for attorney's fee for filing an answer to the writ of garnishment and representing the garnishee; the balance of the funds, after costs of court were paid, to Jake Dupree. All costs were taxed against Quinn. To this judgment Dupree and Quinn both excepted and gave notice of appeal, but only Dupree perfected an appeal.

Appellant brings forward six points of error. The Bank and Quinn make three objections to appellant's brief. By their first and third objections, they contend that this court should dismiss this cause at appellant's cost, including the garnishee attorney's fee by reason of the fact that appellant took the position in the trial court that Quinn had no interest in the funds in dispute, and made a motion in the trial court that Quinn not be allowed to be heard, and offered the assignment in evidence for the purpose of showing that Quinn had no interest in the funds. This was only a mistake of law on the part of the appellant. Further, appellant had alleged fraud as a basis for avoiding the assignment and could offer it in evidence without limitation, or for a limited purpose, without being bound by its contents, but for the purpose of attacking same. Colgrove v. Falfurrias State Bank, Tex.Civ. App., 192 S.W. 580, no writ history; Universal Credit Co. v. Boling, Tex.Civ.App., 108 S.W.2d 836, no writ history. Appellee's first and third objections are overruled.

By their second objection appellees complain of the appellant's having sued out two writs of garnishment under a single number in the district court. This objection is without merit and is overruled without further discussion than to say that a judgment debtor is not limited to a single writ of any nature to collect his judgment, and if the applications for writs had been filed under separate numbers, it would have been appropriate for the trial court to have combined the two and had only one trial. Further, neither appellee contends that any special injury or damage resulted from said writs being sued out under the same number. This question is fully discussed in the following cases and authority: Barton v. Montex Corp., Tex. Civ.App., 295 S.W. 950, writ dis.; Cohn v. Tillman, 66 Tex. 98, 18 S.W. 111; Consolidated Gasoline Co. v. Jarecki Mfg. Co., Tex.Civ.App., 72 S.W.2d 351, affirmed 129 Tex. 644, 105 S.W.2d 663; Medley v. American Radiator Co., 27 Tex.Civ.App. 384, 66 S.W. 86, error ref.; Planters' & Mechanics' Nat. Bank v. Floeck, 17 Tex.

**332**

Civ.App. 418, 43 S.W. 589, err. ref.; Simonton v. Mayblum, 59 Tex. 7; Snyder National Bank v. Pinkston, Tex.Civ.App., 219 S.W.2d 606, no writ history; Texas Co. v. Disney, Tex.Civ.App., 279 S.W. 280, err. ref.; see also, 20 Tex.Jur. 700–1, Garnishment, sec. 5. Appellees' objection No. 2 is overruled.

By his first point, appellant complains of the action of the trial court in awarding any sum of money to the Bank because the debtor Quinn never lost control of the money; therefore, the assignment was void. In order to pass on this point, it will be necessary to review briefly the evidence. According to the evidence Quinn was indebted to the Bank on the date of the execution of the assignment in the sum of $3,029.39. After the assignment, the Bank received from Lone Star the total sum of $3,799.09. Out of this sum only $347.02 was applied on Quinn's indebtedness to the Bank. The witness for the Bank testified that:

"Q. Was the making of further loans contemplated by your bank and Mr. Quinn at the time this assignment was taken? A. Yes, sir.

"Q. Was it taken to secure the overdraft that he had there from time to time? A. Yes, sir."

There is no evidence that any of the money received by the Bank under the assignment was applied against any overdraft. The Bank's witness testified that Quinn had overdrafts at the Bank at different times after the assignment in the total amount of $426.27. The Bank's witness further testified that the funds received by it from Lone Star were in several different checks and some of the time when a check or checks were received, if there were any payments due on Quinn's indebtedness to the Bank, the payment would be deducted from the money received and the balance would either be delivered to Quinn in cash or deposited to his account and when so deposited he was permitted to check it out at will. On one occasion the Bank delivered or deposited to Quinn all the money it received from Lone Star and he gave it a check for a small payment that was due on his account. At other times all the money that was received by the Bank was delivered to Quinn and none of it was applied on his account with the Bank or paid by Quinn back to the Bank.

We are unable to reconcile the figures and testimony of the Bank's witness, because there was only $347.02 that was received by the Bank from Lone Star applied on the indebtedness of Quinn; yet, on the day of the trial Quinn was only indebted to the Bank for the total sum of $1,274.18, part of which was for an overdraft and the balance was secured by chattel mortgages on personal property that, under this record, would be exempt from execution. The evidence further shows that the entire indebtedness owed by Quinn to the Bank on the date of the execution of the assignment was secured by chattel mortgages upon personal property. A careful examination of the statement of facts will not reveal that a single loan was made by the Bank to Quinn as a direct result of or in consideration of the assignment. Much has been written on just this phase of an assignment. It has been uniformly held that an assignment for the benefit of creditors is void where the debtor is permitted to remain in possession of or to use the property assigned. Blue v. Herkimer Nat'l Bank, 2 Cir., 30 F.2d 256, 259. In that case we find this statement: "An agreement, either oral or written, which permits the debtor to use the money assigned, avoids the lien intended, and makes the assignment void." Citing, Benedict v. Ratner, 268 U.S. 353, 45 S.Ct. 566, 69 L.Ed. 991; In re Leslie-Judge Co., 2 Cir., 272 F. 886. The most celebrated case and the foundation of all subsequent cases on this point is Twyne's Case, 3 Coke 80, 76 Eng.Rep. 809. In that case we find the following:

"The donor continued in possession and used them as his own, and by reason thereof he traded and trafficked with others and defrauded and deceived them. 3. It was made in secret. 4. It was made pending the writ. 5. Here was a trust between the parties,

for the donor possessed all and used them as his proper goods; and fraud is always appareled and clad with a trust and trust is the cover of fraud."

See also Christmas v. Russell, 14 Wall. 69, 81 U.S. 69, 20 L.Ed. 762; Mitchell v. Scott, Tex.Civ.App., 14 S.W.2d 916; Linn v. Wright, 18 Tex. 317; Howerton v. Holt, 23 Tex. 51; Carlton v. Baldwin, 22 Tex. 724; Baldwin v. Peet, 22 Tex. 708; Edrington v. Rogers, 15 Tex. 188; Evans v. First Nat'l Bank of Mt. Vernon, Tex.Civ.App., 65 S.W.2d 366, err. dis. Appellant's point 1 is sustained.

What we have said on point 1 actually disposes of this lawsuit, but in the event we are mistaken, we will briefly pass upon the remaining points.

By his 2d, 3rd, 4th, 5th and 6th points appellant complains of the action of the trial court in (2) not holding that the assignment was given with the intent to delay, hinder or defraud his creditors and is void as to the judgment creditor; (3) in not holding that the insolvency of Quinn at the time the assignment was executed, which fact was known to the Bank, rendered the assignment void as to the judgment creditor; (4) in holding that there was a consideration to the debtor Quinn from the Bank for the assignment; (5) in not holding that the amount of funds received by the bank was grossly disproportionate to the amount owed by Quinn and retained by the Bank; and (6) in not holding that Quinn did not release possession of the funds which were purportedly assigned by him to the Bank and in not holding that the retention of the possession of the funds by the debtor voided the assignment.

■■ The instrument sought to be enforced by the Bank recites no consideration whatever to Quinn for its execution. The evidence shows no valid consideration to Quinn for its execution. The law is too well settled that such an assignment is void to necessitate the citation of authority. If the assignment was executed for the consideration of taking care of Quinn's overdrafts, which the Bank freely permit-

ted, such practice is a violation of the Federal Banking Laws and no court will enforce an assignment based upon an illegal consideration.

■ The evidence, and the authorities already cited, support the appellant on each of these points. In the case of Evans v. First Nat'l Bank of Mt. Vernon, supra [65 S.W.2d 368] we find the following appropriate statement based upon the provision of Article 3997 of our Civil Statutes:

" * * * Under this statute, as construed by our Supreme Court, a conveyanve by a debtor is prima facie void as to existing creditors. Maddox v. Summerlin, 92 Tex. 483, 49 S.W. 1033, 50 S.W. 567. And the burden is upon the purchaser in order to uphold the conveyance to rebut the fraudulent prima facie purpose by showing he paid a valuable consideration for the property, Tillman v. Heller, supra [78 Tex. 597, 14 S.W. 700, 11 L.R.A. 628], or that the debtor was possessed of sufficient property at the time of the conveyance subject to execution to pay his debts. Collett v. Houston & T. C. R. Co., Tex.Civ.App., 186 S.W 232. * * * "

Briscoe v. Bronaugh, 1 Tex. 326; Halff v. Goldfrank, Tex.Civ.App., 49 S.W. 1095; 12 R.C.L. 545–6 sec. 69; 37 C.J.S., Fraudulent Conveyances, §§ 81b, 88, 100, 105a, pp. 924, 927, 935–936–937, 941–942; 24 Am.Jur. sec. 20, p. 176, sec. 25, p. 183, and sec. 27, p. 185; 5 Tex.Jur. sec. 19, p. 25; 20 Tex. Jur. secs. 164, 165, 166, pp. 520–521–522; First State Bank of Aransas Pass v. Fuson, Tex.Civ.App., 185 S.W. 1042; Kemp v. Metropolitan Life Ins. Co., 5 Cir., 205 F.2d 857.

■ Another reason, we think, that the trial court erred in holding contrary to the contention of appellant is the fact that according to the Bank's witness the Bank had sufficient collateral to secure its debt, and although all of said indebtedness was past due, no effort had been made by the Bank to collect its debt out of exempt property pledged for security and which the judg-

ment creditor could not reach by execution. Whether or not it was the intention of Quinn or the Bank to defraud Dupree, the judgment creditor, at the time the instrument was signed, or any other creditor, Quinn and the Bank by their acts and conduct, though not morally wrong, actually perpetrated a legal fraud upon Dupree to prevent him from collecting a just debt. Appellant's last five points are sustained.

The only part of the trial court's judgment complained of by appellant is the part wherein the sum of $1,274.18 was awarded to the Bank out of the funds garnished. For the errors hereinabove pointed out, it follows that that part of the judgment awarding said sums of money to said Bank be reversed and judgment here rendered awarding said funds to appellant, Jake Dupree. The balance of the judgment is affirmed. One-half of the costs of this appeal is adjudged against appellee Quinn and one-half is adjudged against appellee Bank.

Reversed and rendered in part and affirmed in part.