Thomson, J.,
delivered the opinion of the court.
On the 1st day of February, 1893, the plaintiffs, Abbot, Hamilton and Harrington, entered into a contract in writing with The Silent Friend Mining Company, whereby the'plain *74 tiffs conveyed to the company a perpetual easement and right of way through a tunnel upon certain mining claims belonging to them, to be used by the company for the development and working of its own mining properties; and also the use of the plaintiffs’ roads, ore bins and shops, for the same purpose ; in consideration of which the company agreed to pay to the plaintiffs $6,000, $3,000 payable at the time of the execution of the contract, and the residue out of the proceeds of the first ore shipped from the company’s property. The complaint set forth the contract in full, credited the company with the payment of the entire purchase money except $1,000, averred that more than sufficient money had been realized from sales of ore to pay the plaintiffs’ claim, but that, in violation of its agreement, it was permitting certain of its officers to appropriate the receipts to their individual uses and purposes, and had failed to pay the plaintiffs the balance due them. There were allegations of the imminent danger of exhaustion of the company’s ore body on account of the rapidity with which the ore was being extracted, and of the resulting insolvency, and inability to pay, of the company. The prayer was for a temporary injunction restraining the company from using any money payable to it for ore, except for the purpose of paying the plaintiffs the amount owing to them, and for a decree making the injunction mandatory by requiring the company to pay to the plaintiffs the first money received by it for ore to the amount of $1,000. There was another defendant who claimed the money by virtue of an assignment made to him by the company of its property, for the benefit of its creditors, after the commencement of this suit; but the question to be determined is not affected by his presence in the case, and he will therefore receive no further notice. The temporary injunction was allowed as prayed, and upon the final hearing a decree was rendered making it perpetual, and ordering the company forthwith to pay to the plaintiffs $1,000, found by the court to be in its possession as proceeds of ore sold, upon pain of being adjudged guilty of contempt of court. The company has brought the case here for review on error.
*75 Several questions are discussed, but the determination which we have reached upon one disposes of the case in this court, and the others will not be noticed. Do the allegations of the complaint bring the case within the cognizance of a court of equity? If they do not, the decree was erroneous throughout. The position of the plaintiffs is that the agreement to pay the balance of the purchase money out of the first proceeds of sales of ore amounted to an equitable assignment of those proceeds, or so much of them as might be necessary to satisfy the plaintiffs’ claim ; and that, therefore, they are entitled to proceed against the fund, and compel specific performance by the company of its agreement to pay out of that fund. Inasmuch as our decision turns upon the effect to be given to the language of that agreement, we quote the portion of the contract containing it. It is as follows:
“In consideration of the premises the said party of the second part agrees to pay to the said parties of the first part the sura of $6,000 as follows, to wit: $3,000 upon the date of execution of this agreement, and the balance of $3,000 from the proceeds of the sale of the first ore shipped from the said Silent Friend Mining Company’s property.”
There are no words in this agreement which could operate to transfer, or which even indicate an intention to transfer, any specific fund, or an interest in any specific fund, to the plaintiffs. No right was conferred upon the plaintiffs to receive the money except as it might be paid to them by the company. The ore belonged to the company, it extracted, shipped and sold it, and when it received the price of its ore the money was its own. The agreement gave the plaintiffs no interest in the money as such; it was simply a promise by the company that when it received the money it would apply it in payment of the debt, and until it should do so no title in the money could pass to the plaintiffs. If it failed in the fulfillment of its promise, the plaintiffs’ remedy was by an action at law against the company for breach of contract.
*76 As to what does, and what does not, constitute an equitable assignment of a fund, there has been considerable adjudication. In Bradley v.-, Ridgway’s Reports, temp. Hardwieke, 194; decided in 1744, the chancellor held that a promise to pay the plaintiff’s demand out of a specific debt did not create a lien upon the debt, saying: “It is common for persons who have expectations from the deaths of their friends to promise to pay their debts out of such legacies, yet such promises will not bind such legacies specifically, notwithstanding such creditors might think they had a right to such an express lien by virtue of their forbearance.” In Christmas' Adm'r v. Griswold, 8 Ohio St. 558, the agreement was that Christmas should pay Fassett $7,435 out of the first money he received from sales of certain lands. The court said that the contract could not operate as an equitable assignment, and created no lien in favor of Fassett’s estate upon Christmas’ share of the proceeds of the lands, quoting the following from Hare & Wallace’s notes to Leading Cases in Equity: “ It is necessary, moreover, in order to constitute an assignment, either in law or equity, that there should be such an actual or constructive appropriation of the subject-matter assigned, as to confer a complete and present right on the assignee, even where the circumstances do not admit of its immediate exercise. A covenant on the part of the debtor, to apply a particular fund in payment of the debt as soon as he receives it, will not operate as an assignment, for it does not give the covenantee a right to the funds, save through the covenantor, and looks to a future act on his part as the means of rendering it effectual. ” The following is from the opinion of Mr. Justice Swayne, in Christmas v. Russell, 14 Wall. 69: “An agreement to pay out of a particular fund, however clear in its terms, is not an equitable assignment; a covenant in the most solemn form has no greater effect. The phraseology employed is not material provided the intention to transfer is manifested. Such an intent and its execution are indispensable. The assignor must not retain any control over the fund — any author *77 ity to collect, or any power of revocation. If he do, it is fatal to the claim of the assignee.” Again, in Trist v. Child, 21 Wall. 441, the same learned justice delivered himself as follows: “,It is well settled that an order to pay a debt out of a particular fund belonging to the debtor gives to the creditor a specific equitable lien upon the fund, and binds it in the hands of the drawee. A part of the particular fund may be assigned by an.order, and the payee may enforce payment of the amount against the drawee. But a mere agreement to pay out of such fund is not sufficient. Something more is necessary. There must be an appropriation of the fund pro tanto, either by giving an order or by transferring it otherwise in such a manner that the holder is authorized to pay the amount directly to the creditor without the further intervention of the debtor. ” In Canty v. Lattemer, 31 Minn. 239, the contract was that Latterner should pay Canty a specified sum of money for his services as attorney for Latterner in a suit then pending, and agreed that Canty should receive the money from the Minneapolis & St. Louis Railroad out of an amount due Latterner from the railroad, to be paid when the suit was settled. The court construed the contract as an equitable assignment, but based its decision upon the ground that the money was to go directly from the railroad company to Canty, and was not to be first collected by him and then paid to Latterner; and in order that its decision upon the facts before it might not be misunderstood, the court added: “A distinction exists between such a case and an agreement that the promisor will pay out of a particular fund. In the latter case the agreement contemplates a continued right in the promisor to recover and hold the money, and that payment shall be made only through him. ”
There are other decisions along the same lines, but those we have cited are sufficient for our purpose.
Counsel seem to be impressed with the idea that the adjudications have been, for the most part, in cases where the rights of third parties were involved, and that the decisions *78 were in some manner affected by that consideration. We do not find such to be the case. Their doctrine clearly is that an agreement like the one before us does not operate as an assignment at all. A claim otherwise valid and enforceable may be postponed or defeated by intervening outside rights, but here the plaintiffs had no claim whatever against the fund, and they mistook their remedy when they invoked the aid of a court of equity.
The decree will be reversed.

Reversed.