[No. 1977.]

WEISS ET AL. v. GULLETT ET AL.

**Contracts—Liens—Sales.**

Where the owners of certain mining claims contracted with attorneys to pay them a certain fee for services connected with said claims and agreed to pay the same out of the purchase money to be received from the sale of said property, a certain per cent. of said purchase money to be paid to said attorneys as it was received and the balance of their stipulated fee to be paid when the final payment was made of the purchase price, and providing that said attorneys were "to receive and be interested in the purchase money on said mine to the extent of" the designated sum, the contract did not create a lien on said mining claims, nor operate to transfer an interest in the purchase money until after it should come into the hands of the vendors, and no right of action accrued in favor of said attorneys against the purchasers of said mining claims who purchased with notice of such contract.

*Appeal from the District Court of Gunnison County.*

Mr. J. M. McDOUGAL, Mr. CHARLES J. HUGHES. Jr., Mr. GERALD HUGHES, for appellants.

Mr. ALEXANDER GULLETT, Messrs. TEMPLE & CRUMP, for appellees.

THOMSON, J.

On the 7th day of April, 1897, Adam J. Weiss instituted a proceeding in equity against William J. Wolfe and others to obtain a decree vesting in him the title to a one-half interest in the Good Hope and Mammoth Chimney lode mining claims, situate in Gunnison county. He claimed the interest by virtue of an alleged contract between himself and certain of the defendants by whom the claims were located. Alexander Gullett and S. D. Crump were made parties defendant because of a contract between them and the other defendants, which will appear hereafter. Gullett and Crump interposed a cross-complaint, in which they set forth the contract referred to, and alleged that on the 7th day of March, 1897, the defendant Wolfe executed to one R. B. Wallace a deed conveying to him an undivided one-fourth interest in the two claims, which deed was immediately recorded; that the interest was conveyed to Wallace for the use and benefit of the plaintiff, Weiss; and that the purpose of the transaction was to defraud the cross-complainants and was the result of a conspiracy for that purpose between Wallace, Weiss and Wolfe. A decree was prayed investing the cross-complainants with a lien on the property described in their contract, for $1,200, and directing a sale of the property to satisfy their claim. Personal judgment for the amount against the plaintiff and Wallace was also prayed. The court, after finding that the facts entitled the cross-complainants to a lien as prayed, and that the charges of conspiracy and fraud were true, decreed a lien in their favor upon an undivided one-fourth of the property, and gave them a personal judgment against the plaintiff and Wallace for the amount of their claim. The plaintiff and Wallace have appealed to this court.

What became of the original suit we are not advised. Only the record relating to the controversy

between the appellees and the appellants is before us.

The following is the contract on which the appellees base their claim:

"This agreement, made and entered into this 10th day of June, A. D. 1895, between W. J. Wolfe, J. S. McCullough, Andrew Scheff and Viola A. Duckett, parties of the first part, and Alexander Gullett and S. D. Crump, parties of the second part, witnesseth: That for and in consideration of the sum of five thousand dollars, to be paid as hereinafter provided by the said parties of the first part to the parties of the second part, it is hereby agreed by and on the part of the said parties of the second part to do and perform all legal services in connection with the title of the said first parties in that mining property known as the Mammoth Chimney lode mining claim and the Good Hope lode mining claim situate in Domingo mining district, county of Gunnison and state of Colorado, and said parties of the second part are to act as counsel and attorneys for the said first parties, jointly and severally, in all litigation which may arise in any way affecting the title of the said first parties to said mining claims, or either of them, or affecting the title of any one of the said first parties thereto; and are, in all matters pertaining to said title and the rights of the first parties, to protect, to the best of their ability, the same and all the ground included within the territory now comprised within the boundary lines of said locations. It is agreed on the part of the first parties hereto that said sum of $5,000, to wit, twenty-five hundred dollars to each of the said second parties, shall be paid as follows: Ten per cent. out of all payments to be made to the said first parties on the purchase money of said Mammoth Chimney lode; and when the final payment of said purchase money shall be made, then the balance of said $5,000 shall be paid; it being understood that in case the bond and option

now held by J. O. H. Spinney shall be taken up, and the purchase money paid thereunder, that the payments amounting to $5,000, as hereinbefore provided, shall be made out of the purchase money stipulated in said option. And it is further agreed, that in case said option shall not be taken up, then the parties of the second part are to be paid out of the purchase money to be received for said Mammoth Chimney lode, the said sum in the same manner, to whomsoever the same may be sold, and the said parties of the second part are to receive and be interested in the purchase money on said mine to the extent of said $5,000 for services aforesaid; it being the agreement that one-fourth of said $5,000 is to be paid by each of the parties of the first part.

"In witness whereof, the parties have hereto set their hands and seals the day and year first above named. The obligations herein are to continue until said first parties shall have disposed of both of said mining claims.

| | |
|---|---|
| "Wm. J. Wolfe. | (Seal.) |
| "J. S. McCullough. | (Seal.) |
| "Andrew Scheff. | (Seal.) |
| "Viola A. Duckett. | (Seal.) |
| "S. D. Crump. | (Seal.) |
| "Alexander Gullett. | (Seal.)" |

The evidence was that Mr. Weiss obtained the money to purchase Wolfe's interest from Mr. Wallace, who was a banker at Monte Vista, giving Wallace a note for the amount, signed by himself and his brother, and securing payment of the debt by causing the deed to be made to Wallace. Of course the deed amounted only to a mortgage. It is claimed that Weiss and Wallace both had knowledge of the contract; and it is inferable that the charge of fraud is based on the supposed fact of such knowledge. We have discovered nothing else which might serve as an

excuse for the charge, or for the finding of conspiracy in the decree. But whether those parties had knowledge of the contract or not, is, in our view, altogether unimportant. As we read the contract, it gave the appellees no claim upon the land, nor upon the purchase money until after it should have passed from the purchaser. The appellees acquired no interest of which the sale by Wolfe, and the purchase by Weiss, could possibly defraud them.

Two contingencies were contemplated by the contract—one, the purchase of the property by Spinney under an option held by him and the other a forfeiture of the option and a sale to some other person. It was conceded on the oral argument by counsel for the appellees that so far as the first provision was concerned, the language employed amounted only to a personal covenant of the proposed vendors that they would pay the appellees after the purchase money should be received by them; but that, by the language of the second, an interest in the purchase money to the extent of the amount owing to the appellees, was tranferred to them. The option was forfeited, and a sale was made to another person, namely, Weiss; and it is contended that their interest attached to the fund in his hands, or in the hands of Wallace, who advanced the money and to whom the legal title was conveyed. The following is the phraseology on which counsel rely in support of their contention: "And the said parties of the second part are to receive and *be interested* in the purchase money on said mine to the extent of said $5,000." What this clause was intended to mean must be found in the entire sentence of which it is a part. The sentence begins with an agreement, "that in case said option shall not be taken up, then the parties of the second part are to be paid out of the purchase money to be received for said Mammoth Chimney lode, the said sum, in the

same manner, to whomsoever the same may be sold.''
This language refers us back to the agreement imme-
diately preceding it. The ''said option'' and the
''said sum are the option and sum mentioned in that
agreement, and the ''same manner'' is the manner
there specified. In each case, therefore, the appellees
were to be paid in the same way; and according to
counsel's concession, under the first of the agree-
ments, they were to be paid by the vendors after the
money had passed into the hands of the latter. And,
in this connection, the stipulation that the appellees
were to be paid out of the money to be received
for the lode is significant. The money could not be
paid until it should be received. But by whom was it
to be received? Manifestly, by the parties making
the sale; so that the interest which counsel say was
transferred to the appellees, could not pass until after
the vendors had received the money.

We have confined ourselves to a discussion of
those two special agreements, because counsel have
done so; but the question which has been raised is
settled by the statement, at the very outset of the in-
strument, of the consideration for the services to be
rendered by the appellees. That consideration was,
''the sum of $5,000, to be paid *as hereinafter pro-
vided, by the said parties of the first part to the par-
ties of the second part.''* The subsequent provisions
referred to, being the two agreements which we have
noticed, simply designate the fund out of which pay-
ments were to be made, and the proportions from time
to time payable; but when the contingency should
arise upon which they were payable, it was from the
parties of the first part that payment must come. That
the money was to be paid out of a fund gave the ap-
pellees no interest in the fund until it should come
into the possession of the other parties. When the
latter should receive it, and not before, the claim of

the appellees would be enforceable; but the contract did not créate a lien upon the mine, or operate to transfer an interest in the money until after it should come into the hands of the vendors; and no right of action accrued to the appellees against the appellants. —*Christmas's Adm'r v. Griswold,* 8 Ohio St. 558; *Christmas v. Russell,* 14 Wall. 69; *Trist v. Childs,* 21 Wall. 441; *Silent Friend Mining Co. v. Abbot,* 7 Colo. App. 73.

    The judgment will be reversed and remanded, with instruction to dismiss the cross-complaint.

*Reversed.*