Thomson, J.
*123 On the 7th day of April, 1897, Adam J. Weiss instituted a proceeding in equity against William J. Wolfe and others to obtain a decree vesting in him the title to a one-half interest in the Good Hope and Mammoth Chimney lode mining claims, situate in Gunnison county. He claimed the interest by virtue of an alleged contract between himself and- certain of the defendants by whom the claims were located. Alexander Gullett and S. D. Crump were made parties defendant because of a contract between them and the other defendants, which will appear hereafter. Gullett and Crump interposed a cross-complaintj in which they set forth the contract referred to, and alleged that on the 7th day of March, 1897, the defendant Wolfe executed to one K. B. Wallace a deed conveying to him an undivided one:fourth interest in the two claims, which deed was immediately recorded; that the interest was conveyed to Wallace for the use and benefit of the plaintiff, Weiss; and that the purpose of the transaction was to defraud the cross-complainants and was the result of a conspiracy for that purpose between Wallace, Weiss and Wolfe. A decree was prayed investing the cross-complainants with a lien on the property described in their contract, for $1,200, and directing a sale of the property to satisfy their claim. Personal judgment for the amount against the plaintiff and Wallace was also prayed. The court, after finding that the facts entitled the cross-complainants to a lien as prayed, and that the charges of conspiracy and fraud were true, decreed a lien in their favor upon an undivided one-fourth of the property, and gave them a personal judgment against the plaintiff and Wallace for the amount of their claim. The plaintiff and Wallace have appealed to this court.
What became of the original suit we are not advised. Only the record relating to the controversy *124 between the appellees and the appellants is before us.
The following is the contract on which the appellees base their claim:
“This agreement, made and entered into this 10th day of June, A. D. 1895, between W. J. Wolfe, J. S. McCullough, Andrew Scheff and Viola A. Duckett, parties of the first part, and Alexander Gullett and S. D. Crump, parties of the second part, witnesseth: That for and in consideration of the sum of five thousand dollars, to be paid as hereinafter provided by the said parties of the first part to the parties of the second part, it is hereby agreed by and on the part of the said parties of the second part to do and perform all legal services in connection with the title of the said first parties in that mining property known as the Mammoth Chimney lode mining claim and the Good Hope lode mining claim situate in Domingo mining district, county of Gunnison and state of Colorado, and said parties of the second part are to act as counsel and attorneys for the said first parties, jointly and severally, in all litigation which may arise in any way affecting the title of the said first parties to said mining claims, or either of them, or affecting the title of any one of the said first parties thereto; and are, in all matters pertaining to said title and the rights of the first parties, to protect, to the best of their ability, the same and all the ground included within the territory now comprised within the boundary lines of said locations. It is agreed on the part of the first parties hereto that said sum of $5,000, to wit, twenty-five hundred dollars to each of the said second parties, shall be paid as follows: Ten per cent, out of all payments to be made to the said first parties on the purchase mone}^ of said Mammoth Chimney lode; and when the final payment of said purchase money shall be made, then the balance of said $5,000 shall be paid; it being understood that in case the bond and option *125 now held by J. O. H. Spinney shall be taken np, and the purchase money paid thereunder, that the payments amounting to $5,000, as hereinbefore provided, shall be made out of the purchase money stipulated in said option. And it is further agreed, that in case said option shall not be taken up, then the parties of the second part are to be paid out of the purchase money to be received for said Mammoth Chimney lode, the said sum in the same mannér, to whomsoever the same may be sold, and the said parties of the second part are to receive and be interested in the purchase money on said mine to the extent of said $5,000 for services aforesaid; it being the agreement that . one-fourth of said $5,000 is to be paid'by each of the parties of the first part.
‘ ‘ In witness whereof, the parties have hereto set their hands and seals the day and year first above named. The obligations herein are to continue until said first parties shall have disposed of both of said mining claims.
“Wm. J. Wolfe. (Seal.)
“J. S. McCullough. (Seal.)
“Andrew Scheff. (Seal.)
‘ ‘ Viola A. Duckett. (Seal.)
“S. D. Crump. (Seal.)
“Alexander Gullett. (Seal.)”
The evidence was that Mr. Weiss obtained the money to purchase Wolfe’s interest from Mr. Wallace, who was a banker at Monte Vista, giving Wallace a note for the amount, signed by himself and his brother, and securing payment of the debt by causing the deed to be made to Wallace. Of course the deed amounted only to a mortgage. It is claimed that Weiss and Wallace both had knowledge of the contract; and it is inferable that the charge of. fraud is based on the supposed fact of such knowledge. We have discovered nothing else which might serve as an *126 excuse for the charge, or for the finding of conspiracy in the decree. But whether those parties had knowledge of the contract or not, is, in our view, altogether unimportant. As we read the contract, it gave the appellees no claim upon the land, nor upon the purchase money until after it should have passed from the purchaser. The appellees acquired no interest of which the sale by Wolfe, and the purchase by Weiss, could possibly defraud them.
Two contingencies were contemplated by the contract — one, the purchase of the property by Spinney under an option held by him and the other a forfeiture of the option and a sale to some other person. It was conceded on the oral argument by counsel for the appellees that so far as the first provision was concerned, the language employed amounted only to a personal covenant of the proposed vendors that they would pay the appellees after the purchase money should be received by them; but that, by the language of the second, an interest in the purchase money to the extent of the amount owing to the appellees, was tranferred to them. The option was forfeited, and a sale was made to another person, namely, Weiss; and it is contended that their interest attached to the fund in his hands, or in the hands of Wallace, who advanced the money and to whom the legal title was conveyed. The following is the phraseology on which counsel rely in support of their contention: “And the said parties of the second part are to receive and be interested in the purchase money on said mine to the extent of said $5,000.” What this clause was intended to mean must be found in the entire sentence of which it is a part. The sentence begins with an agreement, “that in case said option shall not be taken up, then the parties of the second part are to be paid out of the purchase money to be received for said Mammoth Chimney lode, the said sum, in the *127 same manner, to whomsoever the same may be sold. ’ ’ This language refers us back to the agreement immediately preceding it. The “said option” and the “said sum are the option and sum mentioned in that agreement, and the “same manner” is the manner there specified. In each case, therefore, the appellees were to be paid in the same way; and according to counsel’s concession, under the first of the agreements, they were to be paid by the vendors after the money had passed into the hands of the latter. And, in this connection, the stipulation that the appellees were to be paid out of the money to be received for the lode is significant. The money could not be paid until it should be received. But by whom was it to be received? Manifestly, by the parties making the sale; so that the interest which counsel say was transferred to the appellees, could not pass until after the vendors had received the money.
We have confined ourselves to a discussion of those two special agreements, because counsel have done so; but the question which has been raised is settled by the statement, at the very outset of the instrument, of the consideration for the services to be rendered by the appellees. That consideration was, “the sum of $5,000, to be paid as hereinafter provided, by the said parties of the 'first part to the parties of the second part.” The subsequent provisions referred to, being the two agreements which we have noticed, simply designate the fund out of which payments were to be made, and the proportions from time to time payable; but when the contingency should arise upon which they were payable, it was from the parties of the first part that payment must come. That the money was to be paid out of a fund gave the appellees no interest in the fund until it should come into the possession of the other parties. When the latter should receive it, and not before, the claim of *128 the appellees would be enforceable; but the contract did not create a lien upon the mine, or operate to transfer an interest in the money until after it should come into the hands of the vendors; and no right of action accrued to the appellees against the appellants. —Christmas’s Adm’r v. Griswold, 8 Ohio St. 558; Christmas v. Russell, 14 Wall. 69; Trist v. Childs, 21 Wall. 441; Silent Friend Mining Co. v. Abbot, 7 Colo. App. 73.
The judgment will be reversed and remanded, with instruction to dismiss the cross-complaint.

Reversed.