78  597
79  478
78  597
82  244
84  673
78  597
89   99

## E. M. TILLMAN V. A. W. HELLER.

### No. 6574.

1. **Bona Fide Purchaser from Fraudulent Vendor.**—A purchaser from a failing debtor who sold in fraud of his creditors, in order to hold the property must show that he, having no notice of the fraud, paid or had given his negotiable notes for the consideration.

2. **Same—Part Payment.**—The purchaser from an insolvent debtor only paying part of the consideration and giving his nonnegotiable note for the balance will be protected only to the extent of his actual payment.

3. **Burden of Proof.** — The burden of proving that a promissory note given in a sale shown to be fraudulent was negotiable lies upon the purchaser. Testimony that a note was given will not be sufficient to show that the note was negotiable.

4. **Same—Statute Construed.**—Construing article 2465, Revised Statutes, it seems that the burden of proof would shift during the trial.

1. The creditor in order to defeat the conveyance should show the fraudulent intent.

2. When such intent is shown, the purchaser, in order to sustain the transaction, must show that he has paid value.

3. This being shown, the burden again shifts, and the creditor, in order to prevail in the action, must prove that at the time of the payment the purchaser had notice of the fraud.

· APPEAL from Johnson.    Tried below before Hon. J. M. Hall.

On the 10th day of October, 1887, the appellant, E. M. Tillman, procured the issuance of a writ of attachment out of the District Court of Dallas County, Texas, against W. C. McDavid and T. C. Parker, composing the firm of W. C. McDavid & Co., for the sum of $519.75, and on said day caused the same to be levied by the sheriff of Johnson County on certain personal property, of the total value of $505, as the property of said W. C. McDavid & Co.

On the 11th of October, 1887, the appellee, Heller, made a claimant's affidavit and made and executed a claimant's bond, claiming the property as above, and on same day delivered same to the sheriff of Johnson County. The bond was approved by him, and the papers were by said sheriff, with proper endorsements, delivered to the clerk of the District Court of Johnson County, where the claim was by said clerk properly filed, docketed, etc.

On the 18th of November, 1887, the said District Court ordered the parties to make up and file their respective tenders of issues, and on the same day both parties filed their respective tenders of issue. On the 22nd of November, 1887, plaintiffs filed their motion to quash claimant's affidavit and bond. The motion was overruled, and the case was tried by the court and a judgment was rendered in favor of the claimant.

The court filed conclusions of law and fact as follows:

"1. That on the 6th day of October, 1887, defendant purchased the property levied on from Parker and Wm. McDavid, and that at the time he did not know that they or either of them were selling for purpose of hindering, delaying, or defrauding their creditors, if such was their purpose; neither were any facts known to him to lead him to suspect any such purpose.

"2. He had no knowledge that either of the firm owed debts amounting to any sum that should have excited his inquiry into that matter.

"3. Heller purchased in good faith for a valuable consideration, giving his notes in payment of the purchase money, and paying $400 in cash on one of the notes on same day.

"4. There was nothing in the trade or manner of sale to excite Heller's suspicions that the firm were in debt, as the evidence shows they lived in the same small town and no complaint had been heard as to the solvency of the firm.

"5. The firm was insolvent at the time of the sale, also each member of the firm.

"6. We believe the law to be that as Heller was a purchaser in good faith for a valuable consideration, and without any knowledge of the firm's indebtedness, it was not his business to see what disposition was made of his notes or how the firm disposed of the money arising therefrom, and that under the facts he is entitled to judgment."

Tillman appealed.

*Poindexter & Padelford*, for appellant.—1. In a controversy between the creditors of the vendor of certain property and the vendee thereof, whenever the facts and circumstances show that the sale of said property was made by the said vendor for the purpose and with the intent of hindering, delaying, and defrauding his creditors, then the burden of proof is upon the vendee to show that he was and is an innocent purchaser for value, and that he had no notice, either actual or constructive, of the purpose of his vendor in making such sale. Belt v. Raguet, 27 Texas, 471; 2 Sugd. on Vend., 8 Am. ed., 791, sec. 15; Story's Eq. Plead., secs. 805, 806; Weber v. Rothchild, 15 Pac. Rep., 650; Jewett v. Palmer, 7 Johns. Ch., 65; Bishop v. Schneider, 46 Mo., 462; Jackson v. McChesney, 7 Cow., 360; Grimstone v. Carter, 3 Paige, 421; Doswell v. Buchanan's Exr., 3 Leigh, 365;

Johnson v. Toulmin, 18 Ala., 50; Light v. West, 42 Ia., 138; Thomas v. Stone, Walker's Ch. (Mich.), 118.

2. In a controversy between the creditor of a fraudulent vendor of certain property and the vendee thereof, when the evidence shows that the said vendee did not pay a valuable consideration for said property, or if the evidence fails to show that the vendee paid a valuable consideration therefor, then both in the common law and under the statute such sale is void as to the creditors of said vendor, though it should appear that the vendee had no notice of the fraudulent intent of his vendor. Rev. Stats., art. 2465; Brown v. Hedge Co., 64 Texas, 396; Fraim v. Frederick, 32 Texas, 294; 2 Pome. Eq., sec. 750, note 1; 1 Story Eq., sec. 353; Seymour v. Wilson, 19 N. Y., 417; Lee v. Fig, 37 Cal., 336; Randall v. Vroom, 30 N. J. Eq., 357; Dugan v. Vattier, 3 Black, 245; Blight v. Banks, 6 T. B. Mon., 192; Webster v. Bailey, 40 Mich., 641; Matson v. Melcher, 42 Mich., 477–481; Beaty v. Whitaker, 23 Texas, 528.

3. Though a contract of purchase may have been made before the vendee of certain property from a fraudulent vendor had notice of his vendor's fraud, yet if the vendee receives notice of such fraud before he has made an actual payment of the purchase price he can not claim the protection of a bona fide purchaser; and it follows that the promise of the vendee, his contract, bond, nonnegotiable note, or other nonnegotiable security will not render such a vendee a bona fide purchaser; and should the vendee before receiving such notice pay a part of such purchase price, he can only claim an equitable protection to the extent of that portion of the purchase price so paid. Hutchins v. Chapman, 37 Texas, 614; 2 Pome. Eq., sec. 751, note 2; Strong v. Lawrence, 58 Ia., 59; Stone v. Welling, 14 Mich., 514; Blanchard v. Tyler, 12 Mich., 339; Kitteridge v. Chapman, 36 Ia., 548.

4. The courts will not allow a purchaser to enable an insolvent debtor to evade his creditors by giving money or notes which can not be reached by legal process for his visible property which might be subjected to the payment of his debts; and the appellee in this case could not assist McDavid & Co., who were insolvent, to defeat their creditors by purchasing all of their property and paying for same in money and notes, when at the same time he knew said McDavid & Co. were insolvent. Seeligson & Co. v. Brown & Brown, 61 Texas, 182.

5. Though a purchaser from a fraudulent vendor paid a valuable consideration for the property purchased, still the sale would be void as to the creditors of the vendor if the vendee knew of the fraudulent intent of the vendor, or if the vendee was in possession of such facts and circumstances as would reasonably satisfy an individual of the fraudulent intent of the vendor or put him upon inquiry in relation thereto. Blum v. Simpson, 66 Texas, 85; Traylor v. Townsend, 61 Texas, 146; Mills v. Howeth, 19 Texas, 257.

*Smith & Davis* and *W. H. Skelton,* for appellee.—1. When an attaching creditor levies on goods in the possession of a third party as the property of his debtor, the burden is on the attaching creditor to show that such goods belong to his debtor; and if it is shown that such third party in whose possession such goods are found holds such goods by purchase from such debtor, it devolves upon the creditor to show such facts as to make such purchase void in law as to him, the creditor; and we submit that such are not the facts in this case.   Cleveland v. Sims, 69 Texas, 153.

2.   The evidence in this case does show that the defendant executed two notes each for $550, and that he paid $400 the same day on one of the notes; and the presumption in law is that a promissory note is valuable unless it is shown that the maker is insolvent.

3.   If the notes were nonnegotiable, then appellant could have garnisheed the appellee and thereby recovered his debt; and if they were negotiable, then the execution and delivery of said notes did make appellee a purchaser in good faith.

### ON REHEARING.

GAINES, ASSOCIATE JUSTICE.—We are of the opinion that the motion for a rehearing in this case should be granted.   We still concur in all the rulings of the former opinion, except as to the question whether or not the trial judge was correct in his conclusion that the appellee is to be deemed a bona fide purchaser for value.   Under the facts of this case the correctness of that conclusion depends upon the determination of two questions.   First.   It being determined that the sale to appellee was fraudulent as to the creditors of the sellers, W. C. McDavid & Co., and that appellee had no notice of that intent, was it necessary that he should have paid or given his negotiable promissory notes for the consideration in order to protect him against a recovery?   Second.   If that proposition be answered in the affirmative, upon whom did the burden rest to show whether or not the consideration was so paid or so promised?

The appellee testified that he gave two notes, each for $550, and paid $400 before he had any notice of the sellers' intent to defraud their creditors.   He did not testify whether the notes were negotiable or not.   The rule we think universal that a grantee under a junior deed in order to hold land as a bona fide purchaser for value must show that the consideration has been actually paid, or that he has given a negotiable note therefor, which in this court at least is deemed equivalent to the same thing.

We have had some difficulty in determining whether or not a different rule should prevail as to one setting up the defense of an innocent purchaser as against a creditor seeking to set aside a fraudulent conveyance. But after a careful examination of the authorities we have found none that recognize the distinction.   On the contrary, there are quite a num-

ber of cases in which it has been pointedly held that in order for the pur-chaser to make the defense it must appear that the consideration has actually passed. Daugherty v. Cooper, 77 Mo., 532; Arnholt v. Hartwig, 73 Mo., 485; Dixon v. Hill, 5 Mich., 404; Bush v. Collins, 35 Kans., 535. Such is the doctrine recognized by this court in Belt v. Raguet, 27 Texas, 471, and in King v. Russell, 40 Texas, 124, although neither called for a decision upon the point.

We therefore conclude that the appellee can only be protected to the extent of the money actually paid at the time he received notice of the fraudulent intent of his vendors in making the sale, unless the notes given by him were negotiable by the law merchant.

This brings us to the second question: Did appellee have the burden of showing that the notes were negotiable?

In McAlpine v. Burnett, 23 Texas, 649, it is held that the burden is upon the holder of a note claiming a vendor's lien against a purchaser from his vendee to show that the latter either had notice of the lien at the time of the purchase or that he had not paid value. This is put upon the ground that he is seeking to enforce an equity against the legal title. But in the same case it is said that as to a party claiming to be an innocent purchaser upon the ground that he bought without notice of the prior conveyance a different rule prevails, and the burden is upon him to show not only that he had no notice, but that he has paid value. This is be-cause he is seeking to set up an equity against the legal title. Neither of these rules enables us to decide the present question.

Article 2465 of the Revised Statutes declares in effect that a conveyance intended to defraud creditors is void as to them, and in a distinct sentence adds the following provisious: "This article shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had no-tice," etc.

The order of these several provisions seems to indicate how it was in-tended the burden of proof should shift during the progress of the trial: (1) The creditor, in order to defeat the conveyance, is bound to show the fraudulent intent; (2) when such intent is shown, the purchaser, in order to sustain the transaction, must show that he has paid value; (3) this being shown, the burden again shifts, and the creditor, in order to prevail in the action, must prove that at the time of the payment the purchaser had no-tice of the fraud. This seems to us the most reasonable and satisfactory rule. Another argument in its favor is that the payment of the purchase money is a fact peculiarly within the knowledge of the purchaser. 1 Stark. Ev., 421. This reason is especially applicable to the present case. The appellee testified in his own behalf that he gave two notes for the agreed price of the goods, but did not say whether they were negotiable or not. The appellant did not know the truth of the matter. Under such

circumstances it would be unreasonable to place the burden of proof upon the creditor and compel him to go to his adversary for his evidence.

It is unnecessary to retain the case for further consideration. The judgment is therefore reversed and the cause remanded.

*Reversed and remanded.*

Delivered November 21, 1890.