## BARNHART v. ANDERSON et al.

Plaintiff having executed a deed to defendant, it was left with an attorney for delivery on final payment and acceptance of the title. Defendant paid the price in full and took possession; but the deed was left in the attorney's hands and was not recorded. After deeding the land to his codefendant, defendant represented that the title was intact and resold to plaintiff; the original deed being indorsed "Canceled" and returned to plaintiff. Codefendant's deed was not recorded until after such cancellation. **Held,** that the cancellation left the title in plaintiff.

But, even if there was a delivery of the original deed to defendant, within Rev. Civ. Code, § 926, providing that redelivery or cancellation of a deed shall not retransfer the title, the redelivery of the deed and payment of the repurchase price gave plaintiff the equitable title, entitling her to sue to cancel the conveyance to codefendant.

Representations to plaintiff's husband, who acted as her agent in the cancellation of a deed by the grantee, were in legal contemplation made to her.

Under Rev. Civ. Code, §§ 991, 992, 995, making deeds, etc., to defraud purchasers void as to purchasers for value, etc., providing that no such deed shall be avoided unless the grantee was a privy to the fraud, and that the rights of purchasers in good faith and for value shall not be impaired, plaintiff, in suing to set aside a deed from defendant to codefendant, made between the date when plaintiff conveyed to defendant and when the conveyance was canceled on defendant's representing the title to be intact, makes a prima facie case by showing that the conveyance to codefendant was made with intent to defraud plaintiff, entitling her to recover; it being unnecessary to show codefendant's participation in the fraud, in absence of proof by codefendant of purchase in good faith and for value, or a showing that plaintiff had notice of the conveyance, though the petition alleged fraudulent participation by codefendants.

That, after plaintiff deeded land to defendant and before defendant resold to her, he conveyed to codefendant, though he represented, when he resold, that the title was intact, shows his intent to defraud plaintiff.

(Opinion filed, October 20, 1908.)

Appeal from Circuit Court, McCook County. Hon. FRANK B. SMITH, Judge.

Action by Annie Barnhart against P. W. Anderson and another. From a judgment for plaintiff, defendants appeal. Affirmed.

*W. R. Holly* and *Joe Kirby,* for appellants.

Re-delivering a grant of real property to the grantor or canceling it does not operate to re-transfer title. Rev. Civ. Code, sec.

926. Equity cannot be invoked to set aside the law or violate its express provisions. 5 Am. & Eng. Ency. Law, page 326 (1st Ed.) Deceit cannot be predicated upon the false statement of what the law is, however false it may be, whether the deception be by false representation or by the suppression of the truth. Every person must know the law. Upton v. Tribilcock, 91 U. S. 56; Fish v. Cleland, 33 Ill. 243. A representation of what the law will or will not permit to be done, is one on which the party to whom it is made has no right to rely; and if he does so it is his folly, and he cannot ask the law to relieve him from the consequences. The truth or falsehood of such a representation can be tested by ordinary vigilance and attention. It is an opinion in regard to law and is always understood as such. Starr v. Bennett, 5 Hill, 303; Lewis v. Jones, 4 B. & C., 506; Rashdall v. Ford, L. R. 2 Eq. 750. Fraud without resulting pecuniary damage is not a ground for the exercise of remedial jurisdiction, equitable or legal; courts of justice do not act as mere tribunals of conscience to enforce duties which are purely moral. Smither v. Calvert, 44 Ind. 242. To make fraudulant acts available they must appear to have prejudiced him who pleads them. Missouri Val. Land Co. v. Bushnell, 8 N. W. 389, 11 Neb. 192; Clark et al v. Tennant, 5 Neb. 549; Phipps v. Buckman, 30 Pla. St. 401; Alden v. Wright, 49 N. W. 768. To act upon false representation in reliance upon its truthfulness is a necessary fact to be shown by one charging damaging fraud. Cooley, Torts, 502. Lefler v. Field, 52 N. Y. 621.

*A. C. Biernatzki* and *E. H. Wilson,* for respondent.

Representations made to agent are representations to his principal, the knowledge of the agent is the principal's knowledge and fraud upon the agent is fraud upon the principal. Mechem Agency, Sec. 792; 1 Am. & Eng. Ency. Law, 1178. Where the agent is deceived, the law will treat the principal deceived in the absence of any evidence to the contrary. Perkins v. Evans, 15 N. W. 584.

When fraud ,in the inception of the transaction is shown the burden of proving good faith and innocence is cast upon the purchaser claiming under the instrument. Kirby v. Bergun, 15 S. D. 444; Bank v. Graham, 91 N. W. 340; Horman v. Sheren, 8 S. D. 536; Dunn v. Bank, 15 S. D. 454; Thompson v. Bank, 150 U. S.

231; Jamison v. McFarlain, 10 S. D. 574.; Landauer v. Sioux Falls Co., 10 S. D.

CORSON, J.  This action was instituted by the plaintiff to vacate and set aside a certain deed executed by the defendant Anderson to the defendant Rema.  Findings and judgment being in favor of the plaintiff, the defendants have appealed.

It is alleged in the complaint, in substance, that on or about the 30th day of April, 1903, the plaintiff was the owner and in possession of a certain lot in the city of Salem, upon which was situated a livery stable and certain personal property used in connection with the business of conducting the same; that on the said day the plaintiff entered into an agreement with the said defendant Andeson for the sale of the said real estate and personal property on said premises to him for the sum of $3000, $500 of which was paid at that time, and executed a deed of the same, which was duly acknowledged and left with an attorney in Salem, to be delivered upon the final payment of the sum of $3,000 and the acceptance of the title by said Anderson; that before the 12th day of May said Anderson paid the balance of the $3,000 agreed upon, and the deed was still left in the hands of the attorney, and not recorded; that after the contract of sale was made, and the deed executed, the defendant Anderson entered into possession of the property and conducted the livery business connected therewith.  It is further alleged that on or about the 9th day of May, and in pursuance of a fraudulent and corrupt agreement between the defendant Anderson and the defendant Rema, said Anderson executed a deed to the said Rema for the same property, in which deed the consideration is stated to be $1,500, the same being dated and acknowledged on the said 9th day of May, but not filed for record in the office of the register of deeds until the 3d day of June of that year; that on or about the 12th day of May, Anderson, representing to the plaintiff that he had not conveyed or incumbered the said property in any manner, made for the purpose of inducing said plaintiff to repurchase the same, resold the said property to her for the sum of $2,000. that the plaintiff relied on the said representations, believing them to be true; that at the suggestion of said Anderson no

deed was made by him to the plaintiff, but, instead of such deed, the original deed executed by the plaintiff to Anderson was indorsed and signed by him as canceled, and returned to the plaintiff; that the said Rema never paid any consideration for the said premises, and that he took the said deed in his name for the purpose of aiding and assisting the said Anderson in his fraudulent and wrongful purpose, and in pursuance of the fraudulent, corrupt, and dishonest criminal agreement to and with the said Anderson to cheat and defraud the plaintiff by obtaining the said sum of $2,000 from the plaintiff aforesaid. And the plaintiff demands judgment that the said deed executed by Anderson to Rema be declared null and void, and not conveying any title, right, or interest in or to the said premises, or any part thereof, to said Rema, and that the same be ordered to be canceled, and that the plaintiff be declared the sole and absolute owner of the premises, and every part thereof, free from any claim, right, title, or interest to or in the said premises by either of the said defendants.

The defendant Rema in his answer admits the execution of the deed by Anderson to him; alleges that the same was executed by Anderson to him for a valuable consideration; denies that said deed was executed and delivered to him pursuant to a fraudulent agrement with Anderson, and denies that he received said instrument for the purpose of assiting the said Anderson, or for the purpose of cheating or defrauding the plaintiff; admits that on the 30th day of April, 1903, plaintiff was the owner of the property, together with the livery stable situated thereon, and admits that on said date plaintiff sold said property to Anderson, and executed and delivered a warranty deed of said premises to him; and demands judgment that the action be dismissed as to him, and for such other and further relief as to the court may seem just and proper. Whether or not the defendant Anderson filed an answer to the complaint does not appear from the record.

The court finds the facts substantially as alleged in the complaint. From the findings the court concludes that the deed by the plaintiff for the premises mentioned in the complaint, under which Anderson was grantee, was never delivered to Anderson; that Anderson is estopped, and his grantee, Rema, is likewise es-

topped, from claiming any right, title, or interest in or to the said premises, or any part thereof; that the deed made by Anderson for the premises, in which Rema is named as grantee, was made by Anderson for the purpose of defrauding the plaintiff, and was and is void; that Rema was not an innocent purchaser of the premises, and that the plaintiff is entitled to judgment and decree canceling the said deed executed by Anderson to Rema; and also decreeing the plaintiff to be the sole and absolute owner of said premises, free from any claim of right, interest, or title therein, in the defendants or either of them.

It will be observed from the foregoing statement that on the 30th day of April the plaintiff executed a deed conveying the premises to the defendant Anderson for the consideration of $3,000; that said deed was left with an attorney and not recorded; that on or about the 5th day of May, Anderson paid the balance of the purchase price and took possession of the premises; that on the 9th day of May, Anderson executed a deed of the same premises to Rema, which was not recorded until the 3d day of June; that on the 12th day of May, Anderson resold the premises to the plaintiff for the consideration of $2,000, which was paid to him by the said plaintiff, Anderson representing to the plaintiff at the time that the property was free and clear of all incumbrances, and that the title was in the same condition it was at the time he purchased the same on April 30th; that no deed of conveyance was executed by Anderson to the plaintiff on her repurchase of the property, but that, instead thereof, the original deed from her to Anderson was indorsed as "Canceled" by Anderson and returned to her.

It is contended by the defendant: (1) That the deed from the plaintiff to Anderson was to all legal intents and purposes delivered and passed title to him; and (2) that the indorsement on the back of the deed did not constitute a conveyance of the property by Anderson to the plaintiff. This contention of the appellant is untenable, for the reason that the court finds that the deed from the plaintiff to Anderson was never delivered to Anderson, was never recorded, and was not in the possession of Anderson at the time she repurchased said property. This finding of the court is sustained by the evidence, and the cancellation, therefore, of the deed,

made at the time of the repurchase of the property by. the plaintiff from Anderson, left the title still remaining in the plaintiff. It is true that by section 926 of our Revised Civil Code it is provided: "Redelivering a grant of real property to the grantor or cancelling it does not operate to retransfer the title." It will be noticed that by the language of the section that it contemplates a delivery of the original grant, as the language used is "redelivery." What constitutes a delivery of a grant is provided for by section 927, which reads as follows: "Though a grant be not actually delivered into the possession of the grantee, it is yet to be deemed constructively delivered in the following cases: (1) Where the instrument is, by the agreement of the parties at the time of execution understood to be delivered, and under such circumstances that the grantee is entitled to immediate delivery; or (2) where it is delivered to a stranger for the benefit of a grantee, and his assent is shown or may be presumed." All the conditions provided for as constituting a delivery did not exist in this case, as it appeared in the evidence of the attorney the abstract had not been examined by the party designated to examine it. But, assuming that the deed had in fact been delivered, a redelivery of the deed with Anderson's indorsement thereon would, with the payment of the consideration for the repurchase, invest the plaintiff with the equitable title, which would be sufficient under the facts found by the court, to entitle the plaintiff to maintain this action. In Russell v. Meyer, 7 N. D. 335, 75 N. W. 262, 47 L. R. A. 637, the learned Supreme Court of North Dakota, in discussing this question, says, "that, although the legal title does not pass by a redelivery, yet the equitable title to the land does pass, and that a court of equity will treat the grantor as a mere trustee of the legal title, and require him to convey when the plaintiff seeks such relief." Linker v. Long, 64 N. C. 296; 13 Cyc. 724; 9 A. & E. Encyc. 164; Warvelle, Vendors, § 505.

It is further contended by the appellant that there is no evidence to sustain the findings of the court that plaintiff repurchased the said premises, and this contention seems to be based upon the theory of the appellants that the transaction was with Mr. Barnhart, the husband of the plaintiff, and not with the plaintiff in per-

son. But this contention is clearly untenable, for the reason that the court's twelfth finding of fact finds "that the entire transaction for the sale and repurchase of said property was made through Elmer Barnhart, acting for and in behalf of the plaintiff as her agent, and that he was authorized to so act by her." This finding is fully sustained by the evidence. Mechem on Agency, § 792; 1 Am. & Eng. Ency. of Law, 1178; Tuckwell v. Lambert, 5 Cush. (Mass.) 23; Perkins v. Evans, 61 Iowa, 35, 15 N. W. 584. In the latter case the learned Supreme Court of Iowa in its opinion says: "The defendants contend, however, that the evidence fails to show that the plaintiff was deceived by it. The purchase was not made by the plaintiff personally. One Scott acted as his agent in the purchase, and transacted the whole business for him. Scott had knowledge of the entry, and in making the purchase relied upon it as being correct. As to whether the plaintiff had any personal knowledge of the entry, or not, there was no evidence whatever. The defendants contend that, such being the fact, the plaintiff cannot recover. But in our opinion their position cannot be sustained. We think that where a public officer knowingly makes a false record, and a person is injured in a transaction by reason of the fact that his agent, charged with the whole business pertaining to the transaction, is deceived by the record, the law will treat the principal as deceived, in the absence of any evidence to the contrary." In the case of Tuckwell v. Lambert, supra, the learned Supreme Court of Massachusetts in its opinion says: "As to the first point, the representation made to Low, who was acting by agreement for the plaintiff, was, in effect, a representation to the plaintiff; that it was made with reference to a sale, and to induce a sale, and therefore inures to the purchaser." In contemplation of law, therefore, the representations made to the husband, Barnhart, who was acting as the agent of the plaintiff, were made to her.

Exceptions were taken by the appellant to a number of findings of the court upon the theory, apparently, that the evidence failed to show that the transactions were with the plaintiff in person; but, as we have seen, the transactions were all made by the husband, Barnhart, as the agent of the plaintiff, and the findings of the

court were evidently based upon the theory, which we think was the correct one, that the representations made to the agent were in legal effect made to the principal, and these findings are fully sustained by the evidence. Clearly, therefore, these exceptions are not well taken.

At the close of all the evidence the defendants moved the court to rule and decide that no cause of action had been proven or established, on the ground that the complaint proceeds upon the theory and expressly charged that the defendant Rema was engaged with Anderson in the scheme to defraud the plaintiff, and there is no proof that the defendant Rema did not pay a fair value for the property, and the evidence shows exclusively that Anderson was in possession when he conveyed to Rema, and the legal title was in Anderson at that time, which was prior to the transaction under which the plaintiff claims; that it is not alleged in the pleadings that the plaintiff, or any one for her, examined the record to see whether Anderson had made any conveyance of the premises or incumbered them. But this contention is clearly untenable, for the reason that plaintiff had a right to rely upon Anderson's representations, and that the burden of proving that the defendant Rema purchased the property in good faith and for a valuable consideration was imposed upon him. The record discloses, however, that there was no evidence on the part of Rema or Anderson; the only evidence in the case being that introduced by the plaintiff,

Sections 991, 992 and 995 of our Revised Civil Code provide:

"Every instrument other than a will, affecting an estate in real property including every charge upon real property, or upon its rents or profits, made with intent to defraud prior or subsequent purchasers thereof, or incumbrancers thereon, is void as against every purchaser or incumbrancer, for value, of the same property, or the rents or profits thereof.

"No instrument is to be avoided under the last preceding section, in favor of a subsequent purchaser or incumbrancer having notice thereof at the time his purchase was made or his lien acquired, unless the person in whose favor the instrument was made was privy to the fraud intended."

"The rights of a purchaser or incumbrancer in good faith and for value are not to be impaired by any of the foregoing provisions of this chapter."

It will be observed that it was only necessary, therefore, for the plaintiff in the first instance to prove that the conveyance made by Anderson to the plaintiff was made with intent to defraud her, and when that was established a prima facie case was made on her part, entitling her to recover, in the absence of proof on the part of Rema that he purchased the property in food faith and paid a valuable consideration therefor—in other words, that he purchased the property without notice of plaintiff's title and paid a valuable consideration therefor. It would seem that the proper construction to be given to these actions is that, when the deed sought to be canceled is shown to have been made to defraud a prior or subsequent purchaser, a prima facie case is made; and this alone is sufficient to avoid the deed, unless it appears that the subsequent purchaser, though paying a valuable consideration, had notice, when he is then obliged to show that the first purchaser was privy to the fraud; but it is not necessary to connect the purchaser with the fraud, except when it appears from the evidence that the subsequent purchaser had notice; and in all cases, if the fraud of the grantor is shown, it is upon the defendant to show that he is a purchaser in good faith and for value in order to defeat the action. When, therefore, the plaintiff proves that the deed sought to be avoided was made with a fraudulent intent, in the absence of proof on the part of the defendant that he purchased the property in good faith—that is, without notice and for value—he is entitled to a judgment declaring the deed null and void.

It is said in such a case that the burden shifts during the trial; that is, when the plaintiff has shown that the deed he seeks to avoid was fraudulently made, it then becomes the duty of the defendant accused, in order to defeat the action, to show that he was a purchaser in good faith and for value. In such case, if such proof is made on the part of the defendant, then it becomes necessary in order to entitle the plaintiff to maintain his action, to show that the defendant was privy to the fraudulent conveyance. The rule applicable to this class of cases is clearly stated by the Su-

preme Court of Texas in Tillman v. Heller, 78 Tex. 597, 14 S. W. 700, 11 L. R. A. 628, arising on the statute of Texas, one section of which declares: "This article shall not affect the title of a purchaser for a valuable consideration, unless it appear that he had notice." The court in its opinion says: "The order of these several provisions seems to indicate how it was intended the burden of proof should shift during the progress of the trial: (1) The creditor, in order to defeat the conveyance, is bound to show the fraudulent intent. (2) When such intent is shown, the purchaser, in order to sustain the transaction, must show that he has paid value. (3) This being shown, the burden again shifts, and the creditors, in order to prevail in the action, must prove that at the time of the payment the purchaser had notice of the fraud. This seems to us the most reasonable and satisfactory rule. Another argument in its favor is that the payment of the purchase money is a fact peculiarly within the knowledge of the purchaser."

In Starin. v. Kelly, 88 N. Y. 419, the Court of Appeals, in discussing this question, uses the following language: "Under the statute a creditor, assailing a transfer of property as fraudulent, may succeed by simply showing a fraudulent intent on the part of the vendor, or such intent on the part of the vendee. If, however, the vendee shows that he paid a valuable consideration for the property transferred to him, then proof of the fraudulent intent of the vendor only is not sufficient. Then there must be proof, also, of a fraudulent intent on the part of the vendee, or that he had notice of the vendor's fraudulent intent. It is believed that these rules existed and were applied at common law before the statute against fraudulent conveyances was enacted. The proof of notice on the part of the purchaser of the fraudulent intent of the vendor, when necessary to establish it, need not be direct and positive; but such notice may be proved, like any other fact in the case, by circumstances and proper and legitimate inferences to be drawn from the whole transaction." That such is the proper construction of the provisions of our Code is quite clear from the pleadings which are required in actions of this character on the part of the defendant. Weber v. Rothchild, 15 Or. 385, 15 Pac. 650; Newton v. Newton, 46 Min. 33, 48 N. W. 450; 2 Pom. Eq.

Jur. 784; Frost v. Beckham, 1 Johns. Ch. (N. Y.) 302; 1 Story's Eq. Pl. 805. It is well settled in this jurisdiction that, when fraud in the inception of the transaction is shown, the burden of proving good faith and the payment of a valuable consideration is imposed upon the purchaser claiming under the instrument. Landauer v. Sioux Falls Company, 10 S. D. 205, 72 N. W. 467; Dunn v. Bank, 15 S. D. 454, 90 N. W. 1045; Kirby v. Bergun, 15 S. D. 444, 90 N. W. 856; Hormann v. Sherin, 8 S. D. 36, 65 N. W. 434; Abbott's Trial Brief, 367. In the latter work the rule is stated as follows: "Where there is evidence that the instrument had a fraudulent inception, the burden is on the transferee to show under what circumstances the prior title was taken and that he is either a bona fide purchaser or purchased from one who was."

The principle established by these authorities is clearly applicable to the case at bar. In this case it was sufficient for the plaintiff, in making out her case, to show that, after the execution of the deed to Anderson, he, before reselling the same to her, conveyed the property to Rema, thereby proving that his representations made to her were untrue, and from these facts the court was authorized to draw the conclusion that Anderson, in reselling the property to the plaintiff, intended to defraud her, and in the absence of proof on the part of Rema that he purchased the property in god faith and for value the plaintiff was entitled to a judgment as prayed for. The finding of the court, therefore, as to the fraudulent intent of Anderson in the transaction, was clearly justified by the evidence.

It is alleged in the complaint that Rema took the said deed from Anderson for the purpose of aiding and assisting the said Anderson in his fraudulent and wrongful purpose, and in pursuance of a fraudulent, corrupt, and dishonest agreement to and with the said Anderson to cheat and defraud the plaintiff by obtaining the sum of $2,000 from her. While, perhaps, it might be contended that the evidence in the case did not in terms establish this corrupt and fraudulent agreement between Rema and Anderson, yet a court or jury might reasonably draw the inference from the transaction that there was such an agreement. But there is no specific finding by the court that such an agreement existed, other

than the general finding "that all the allegations in the complaint herein are true"; and, as we have seen, it was not necessary for the court to make a special finding upon that subject, for the reason that Rema introduced no evidence proving or tending to prove that he was a purchaser in good faith and for value. It was not necessary, therefore, for the plaintiff to prove such corrupt and fraudulent agreement in order to entitle her to a judgment in this action, and in view of the evidence this allegation became entirely immaterial, and we shall not, therefore, give this allegation of the complaint further consideration.

The decision of the court, therefore, that the plaintiff was entitled to a judgment canceling the said deed executed by Anderson to Rema and decreeing the plaintiff to be the sole and absolute owner of said premises, free and clear of any right, claim, interest, or title thereto in the defendants or either of them, was clearly right. We have not deemed it necessary to review the various questions presented by the appellants separately, as they are all or nearly all based upon the erroneous theories that it was necessary for the plaintiff to prove, in making out her case, that the representations by Anderson were made to her personally, and that it was necessary for the plaintiff to prove that Rema was not a purchaser in good faith, for value, and without notice; but, as we have seen, neither of these theories are sustained by the authorities.

The judgment of the circuit court and order denying a new trial are affirmed.

FULLER, J., taking no part in this decision.