SOPHIA BEAVERS ET AL. v. J. A. BAKER.

Decided November 27, 1909.

1.—Trial—Agreement as to Title.

Where the plaintiff and the defendant claimed title to the land in controversy under a common grantor, an agreement on the trial that the defendant had acquired by purchase from the grantor the property described in the deed to her, should not be so construed as to require a peremptory instruction in favor of the defendant when said agreement was evidently not intended to eliminate plaintiff's contention that he was an innocent purchaser without notice of defendant's claim.

2.—Vendor and Vendee—Prior Vendee—Mistake in Description.

The title of a bona fide purchaser of land for value without notice is not affected by a claim of a prior purchaser of the same land from the same grantor, arising because of an error in the description in the deed to the prior grantee.

3.—Same—Case Stated—Burden of Proof.

A town lot was described and sold by reference to a certain plat or map of the town; an adjacent lot was described and sold by reference to a different plat or map of the town; the two maps were not alike and the description caused a conflict between the two lots. In a suit of trespass to try title by the second grantee against the first grantee for the conflict between their respective lots, held: First, whatever right the first grantee might have against the common grantor upon the ground of fraud or mistake, it could not affect the rights of the second grantee unless he had notice at the time of his purchase of the fraud or mistake; second, under the circumstances of this case the second grantee held the legal title and the court correctly placed the burden of proof on the first grantee to show that the second grantee had notice at the time of his purchase of the first grantee's equity.

4.—Same—Partial Payment of Purchase Money—Bona Fide Purchase—Equity.

One setting up the equity of a bona fide purchase of land without notice of a prior title can be protected to the extent only of his payment of the purchase money and so much thereof as may be evidenced by negotiable promissory notes. Upon proper pleading and proof equity would adjust the respective rights of the parties.

5.—Bona Fide Purchaser—Negotiable Note.

The execution of negotiable promissory notes for the purchase money of land is equivalent to the payment of the money so far as constituting the purchaser a bona fide purchaser for value, is concerned.

Appeal from the District Court of Tarrant County. Tried below before Hon. Irby Dunklin.

*Martin & Smith,* for appellants.—We respectfully submit that the agreement referred to effectually cuts off appellee Baker's chance of recovery in this case, plaintiff having only paid $15 and agreed to pay $385 more at the rate of $5 per month, and bought for this sum a lot shown by his deed fifty by one hundred feet in size, and that he has over sixty feet of the front end of this lot still free from all claims of appellants, the testimony showing only thirty feet of the rear end of the land described in his deed as being the land in controversy. The testimony also shows other facts as potent as this as contradicting any claim he might have as an innocent purchaser for value without notice.    Evans v. Templeton, 6 S. W., 843, 69 Texas, 375; Grand Fraternity v. Melton, 102 Texas, 399; Lunn v. Scarborough, 35 S. W., 508; Urambula v. Sullivan, 80 Texas, 615; Watkins v. Edwards, 23 Texas, 448; Rogers v. Pettus, 80 Texas, 425.

Where one purchases land partly for cash and partly on credit, he is only an innocent purchaser to the extent that the proportion the cash payment bears to the credit portion of the price, and if there is enough of the land to which no prior claim is urged to compensate him for the cash paid, as between him and a claimant claiming under a prior conveyance to him of less than one-half, or rather of less than the proportion represented by the credit price, the one asserting right under a subsequent conveyance is, as a matter of law, not an innocent purchaser for value.    Evans v. Templeton, 6 S. W., 843.

The burden of one claiming under subsequent rights as against one claiming under a right acquired prior thereto, is on the one claiming under rights that are later in point of time.    Watkins v. Edwards, 23 Texas, 448, states the rule that the burden is on the one claiming under the last right to show these facts; and the same doctrine is affirmed in 23 Texas, 528 and 573; 25 Texas, 275; 26 Texas, 262 and 332; 34 Texas, 451; 36 Texas, 669; 37 Texas, 63; 39 Texas, 42 and 599; 44 Texas, 263; 48 Texas, 75; 56 Texas, 267, and other Texas cases.

*Capps, Cantey, Hanger & Short,* for appellees.—The title to land of a *bona fide* purchaser for value without notice is not affected by any claim of a prior purchaser from same grantor, arising because of error in the description in deed to prior grantee, due either to fraud of grantor or mutual mistake of grantor and prior grantee, hence, a peremptory instruction to find for appellant was properly refused.    Farley v. Deslonde, 69 Texas, 461; Garrison v. Crowell, 67 Texas, 628; Flanagan v. Oberthie, 50 Texas, 379; Ranney v. Hogan, 1 Posey, 257; Hill v. Moore, 62 Texas, 613; Brook v. Moreland, 32 Texas, 384; Pierson v. Tom, 1 Texas, 584.

Execution of a negotiable note is as effectual as payment of same amount in cash to show purchase for value.    Tillman v. Heller, 78 Texas, 597; Watkins v. Sproull, 28 S. W., 356; Cameron v. Romele, 53 Texas, 238; Dodd v. Gaines, 82 Texas, 429.

The title to land of a *bona fide* purchaser for value without notice is not affected by any claim of a prior purchaser from same grantor arising because of error in description in deed to prior grantee, due either to fraud of grantor or mutual mistake of grantor and prior

grantee; hence said special charges Nos. 1, 2 and 3 asked by appellants were properly refused.

A party asserting an equitable claim or title to land against the holder of the legal title has the burden of showing notice of such equitable claim to the holder of the legal title, or such facts as would put an ordinarily prudent person upon inquiry that would lead, if pursued, to a discovery of such equitable claim; hence, the court did not err in charging the jury that the burden of proof was on appellants to show that appellee Baker was not an innocent purchaser for value without notice. Rogers v. Houston, 94 Texas, 403; Baldwin v. Root, 90 Texas, 547; Barnes v. Jamison, 24 Texas, 363.

This cause, being a trespass to try title suit, and appellants having specially plead their defense in addition to the statutory plea of not guilty, they were not entitled to make any other defense than as plead, and as they did not plead that the map they bought by was of record, they were not entitled to have the cause submitted to the jury on the theory that there were two maps of the North Fort Worth Townsite Company of record. Long Manfg. Co. v. Gray, 35 S. W., 34; Shields v. Hunt, 45 Texas, 424; Custard v. Musgrove, 47 Texas, 217; Rivers v. Foote, 11 Texas, 662.

CONNER, Chief Justice.—On September 21, 1906, appellee Baker instituted this suit to recover all of lot 13 in Block 59 of the city of North Fort Worth, Texas, "as per map of same recorded in volume 63, pages 149-150, of the deed record of Tarrant County." Appellant Sophia Beavers owns lot 6 immediately west of said lot 13, and as part of said lot 6 had fenced about thirty feet, as appellee alleges, of the west end of said lot 13, and hence the suit. The trial resulted in a verdict and judgment for appellee, of which appellants complain.

The facts substantially are that the city of North Fort Worth was duly incorporated under the provisions of chapter 11, title 18 of the Revised Civil Statutes of Texas, as amended in chapter 131 of the Acts of 1897, on the 12th day of November, 1902, at which time the proceedings, together with a plat of the incorporated territory, including said block 59, was duly recorded "in Deed Record of Plats, volume 106, pages 64, 65, 70 and 71, Tarrant County, Texas." The plat here referred to shows that lot 6 is about twice the depth of lot 13, but fails to show in feet the exact width or depth of either lot, and it also fails to show that there was any alley platted between the lots. Thereafter, on the 29th day of December, 1902, the North Fort Worth Townsite Company executed a lease of said lot 6, block 59, to J. G. Beavers, which, among other things, conferred upon Beavers an option of purchase. The lot in the lease was described merely as "lot 6, block 59, in North Fort Worth, according to the plat thereof on record in the office of the clerk of the County Court of Tarrant County, Texas." It was formally admitted that Sophia Garbutt, now Sophia Beavers, acquired by purchase all of the rights and interest to said lot 6 that had been conferred upon J. G. Beavers by the contract above mentioned, and it is undisputed that later she exercised the option given to Beavers, and purchased lot 6 from the North Fort Worth Townsite Company, receiving deed therefor on November 4, 1903, the

deed, however, describing the lot in the same terms as it was described in the Beavers contract, viz., as "lot 6 in block 59 in North Fort Worth, according to the plat thereof on record in the office of the clerk of Tarrant County, Texas." The deed was duly recorded June 9, 1906. Beavers testified, without contradiction, that at the time of the contract with him for the purchase of lot 6, the agent of the townsite company exhibited a printed map, incorporated in the record, which shows lot 6 to have a depth of one hundred and forty feet, and that the lines of the lot were actually so pointed out to him. This printed map represents block 59 substantially the same as the map hereinbefore referred to, except that the printed map by figures denotes that lot 6 has a frontage west of fifty feet with parallel lines extending east to a depth of one hundred and forty feet. Sophia Garbutt later, and prior to the institution of this suit, intermarried with said J. C. Beavers, and both, as also the townsite company, are parties herein.

Appellee Baker claims lot 13, block 59, by virtue of a deed executed by the president of the North Fort Worth Townsite Company on the 16th day of August, 1906, and recorded on the 18th day of that month. The deed recites "the consideration of four hundred dollars, payable $15 in cash, and a promissory note providing for the payment of $5 per month, with interest at the rate of eight percent per annum," and thus describes the lot: "Lot 13, in block 59, of the town of North Fort Worth, as per map or plat of same recorded in volume 63, page 149 of the deed record of Tarrant County, Texas." The map referred to in this deed is one that was made and duly recorded by the "North Fort Worth City Company of Fort Worth, Texas, by N. Harding, receiver," on the 2d day of October, 1894, and shows that lot 13 has an east frontage of fifty feet, extending back about ninety feet to an alley, and that lot 6 fronts west with an eastern extension one hundred feet to the same alley, the width of the alley not being shown. It is undisputed that the North Fort Worth Townsite Company is the grantee and successor of the North Fort Worth City Company, and the authority of Harding, as receiver, is not questioned.

The court thus submitted the issues:

"Gentlemen of the Jury: If from the evidence you find that at the time the written contract between the North Fort Worth Townsite Company and J. G. Beavers for the purchase of the property therein described was entered into, it was agreed by and between Mr. Hopkins, representing said company, and said J. G. Beavers, that the lot referred to in said contract was 140 feet in depth; and if you further find from the evidence that to give said lot that depth would include the property in controversy, and that the map referred to in said contract showed the lot to be of that depth, or that at the time plaintiff purchased the lot described in his deed introduced in evidence he had notice of any fact which would have put a person of ordinary prudence upon inquiry that would, if pursued, have led to a discovery of said understanding and agreement by and between said Hopkins and said Beavers, if you find there was such an agreement, then you will return a verdict in favor of defendants, J. G. Beavers and Sophia Beavers, as

against their co-defendant, North Fort Worth Townsite Company, and as against plaintiff.

"The burden is upon the defendants to sustain by a preponderance of the evidence the affirmative of the issues submitted to you in foregoing portions of this charge, and if they have not discharged that burden you will return a verdict in favor of the plaintiff for the property sued for and described in his petition, and also in favor of defendant, North Fort Worth Townsite Company, on the cross-bill against it by defendants, J. G. Beavers and Sophia Beavers.

"You are the exclusive judges of the credibility of the witnesses, of the weight of the evidence and of the facts proved."

The verdict and judgment was for appellee, and appellants have assigned a number of errors. We can not uphold the contention that the agreement in the trial to the effect that Sophia Garbutt by purchase acquired all of the interest in lot 6 J. H. Beavers had at the time he sold to her, and that Mrs. Garbutt acquired from the North Fort Worth Townsite Company the property described in the deed of the company to her, required the peremptory instruction requested in appellants' favor. These agreements were evidently intended to only close dispute as to the fact, otherwise undisputed in the record, that Mrs. Garbutt acquired from Beavers all of the interest in lot 6 he had secured by virtue of his contract with the townsite company, and all of the interest the company conveyed by the deed to her. There yet remained the question of whether, as against appellee, the deed in fact conveyed the land in controversy, and if so, whether appellee had notice thereof. The court therefore properly rejected the peremptory instruction.

Special charges numbers one, two and three required a finding for appellants in event there was either fraud or mutual mistake in the descriptive recitation of her deed, regardless of whether appellee had notice thereof. The charges were therefore properly rejected as ignoring this issue.

The objection to the exclusion of the testimony shown in bills of exceptions numbers one, two and three, to the effect that at the time Beavers sold to Mrs. Garbutt, he represented the lot to have a depth of one hundred and forty feet, is obviated by the fact that it is agreed that she acquired all of the interest held by Beavers, and the court in effect so assumed in his charge. The charge also destroys the force of the further suggestion that the evidence was relevant to appellants' plea for a correction of the deed to Mrs. Garbutt. Whatever the right as between Mrs. Garbutt and the townsite company, it could not affect appellee unless he had notice at the time of his purchase of the fraud or mistake, and the instruction was to the effect that appellants were entitled to recover if appellee had such notice.

The remaining questions present more difficulty, perhaps. In the ninth assignment it is insisted that the court's charge is erroneous in placing the burden of proof upon appellants. It is true that ordinarily the burden is upon the subsequent vendee of land to show that he is a *bona fide* purchaser for value without notice of the title of a prior grantee (see Revised Statutes, article 4640; Watkins v. Edwards, 23 Texas, 448), but as applied to the circumstances of this case we are

of opinion that the court's charge is correct. Appellants proceeded upon the theory that the map or plat to which the contract of Beavers and the later deed to Mrs. Garbutt referred was not the controlling plat, and that said deed without correction was insufficient to vest in Mrs. Garbutt the legal title to any part of the land in controversy. In appellants' answer they specially pleaded that the recitation in the deed from the townsite company to Mrs. Garbutt, viz.: "As shown by the map now of record in the county clerk's office of Tarrant County, Texas," was placed in the deed "either by mutual mistake of the parties or placed therein by defendant (the townsite company) in order to defraud and deprive her (Mrs. Garbutt) of a portion of the property she bought and paid for, and for that reason she says that to this extent the recital in said deed is incorrect," and appellants prayed for reformation and correction of the deed so as to show title to the land in controversy. It therefore being in effect admitted that the controlling map was the one to which reference was made in appellee's deed he became invested with the legal title to lot 13, which, according to the map, included the land in controversy, and could hence be denied a recovery only by proof of the special defense made, the burden of doing which rested upon appellants. In other words, appellee was in the attitude of holding the legal title as against which appellants offered a title in equity and sought enforcement of the appropriate equitable remedy. Appellants were therefore required to not only prove their equitable title, but also to show that the holder of the legal title had notice thereof. Halbert v. De Bode, 15 Texas Civ. App., 615, and cases therein cited on this point, page 630.

Error is assigned to the rejection of the following charge requested by appellants, viz.: "You are charged that if defendant Beavers bought a lot 50 by 140 feet, and that he sold his contract to Mrs. Sophia Garbutt (now Sophia Beavers), and that plaintiff bought said lot 13 partly on credit and partly for cash, and that there is enough of said lot 13 left outside of the land in controversy to compensate him for the cash paid, if any is shown to be paid by the evidence, then and in that event you will find for defendants, Beavers." Possibly the facts, if fully developed, would have entitled appellants to the relief indicated in the charge quoted, for the rule is that one setting up the equity of a *bona fide* purchase without notice of the prior title can be protected to the extent only of his payment of purchase price, and the making of a non-negotiable note is not payment. (Evans v. Templeton, 69 Texas, 375.) The execution, however, of negotiable promissory notes for the purchase money is held in this State to be such payment as entitles a person, not otherwise precluded, to the protection of the rule. (Tillman v. Hellner, 78 Texas, 597; Watkins v. Sproull, 8 Texas Civ. App., 427; Cameron v. Romele, 53 Texas, 238; Dodd v. Gaines, 82 Texas, 429.) As we have seen, the burden of proof was on appellants below to establish their equity and now here to show error in the court's rejection of the charge, and we are of opinion that they have failed to discharge such burdens. In the statement under the assignment under consideration nothing appears save a copy of the rejected charge. The record otherwise shows that appellee paid cash and gave promissory notes for the remainder of

the purchase price for lot 13, but there is nothing to show the value of that part of lot 13 not in controversy in this suit. If that part of lot 13 that would remain after excluding the land claimed by appellant, equals in value appellee's cash payment, or if the promissory notes given by appellee were non-negotiable, appellants should have so shown. Otherwise, we are unable to say that the evidence raises the issue, and that the court committed reversible error in rejecting the special charge quoted.

We conclude that all assignments of error should be overruled and the judgment should be affirmed.

*Affirmed.*

Writ of error refused.