Bob G. HUNTER, Appellant,

v.

Louis PITCOCK et al., Appellees.

No. 16227.

Court of Civil Appeals of Texas.

Fort Worth.

April 28, 1961.

Lee Shipp, Dallas, for appellant.

Charles E. Thompson, Atlanta, Harrell & Thompson and William G. Thompson, Breckenridge, for appellees.

MASSEY, Chief Justice.

This is a garnishment case. The garnished funds constituting increment from realty, the right to the funds garnished depends upon whether one Byron Haynes, defendant in judgment underlying the garnishment, owned a certain interest in real estate in Guadalupe County, Texas up until the date Pitcock purchased the same at a Sheriff's Sale following levy of execution under and by virtue of said judgment.

Judgment was rendered for Louis Pitcock, et al. as plaintiffs in the suit for garnishment, and Bob G. Hunter appealed. Hunter was an interpleaded party to the garnishment case as a claimant to the fund accumulated in the hands of the garnishee. The theory of Hunter's claim was that he had acquired title to the interest in the realty formerly belonging to Haynes, along with the increment therefrom accumulated in the hands of the garnishee, dating back even prior to that on which he received title to the realty, as an innocent purchaser for good and valuable consideration. The fund garnished was an accumulated amount resulting from earnings due the owner of an interest in an oil and gas leasehold estate through the production of minerals therefrom. In common parlance of the oil industry this is termed "oil runs".

Judgment affirmed.

An appellee, along with Pitcock, is the Valley Steel Products Company, through its trustee. Since the decision of the court, based upon adequate evidence and admissions on the part of Hunter, awarded this appellee rights prior to those of Pitcock in the amount garnished and no complaint because thereof is made by Pitcock, we do not need to lengthen our discussion by reference to the background of its claim.

Hunter's actual controversy is with Pitcock and it is with this we are concerned.

In late 1957 and early 1958 Haynes found himself in personal and financial difficulties in the oil business. By February 13, 1958, Pitcock's suit for personal judgment against him was on file in Young County, Texas, and the sheriff was trying to obtain service of citation. Having secured an order permitting service of citation upon Haynes under Texas Rules of Civil Procedure, rule 106, the sheriff obtained service at Haynes' office on February 13th. Haynes' secretary was Marion Sasse. On the same day that citation was served, Haynes executed an assignment transferring his interest in the property in Guadalupe County to Miss Sasse, which instrument was placed of record. Simultaneously therewith Miss Sasse executed a reassignment of the same property which instrument was received by Haynes but never recorded.

Pursuant to Pitcock's suit a personal judgment was obtained for over $18,000 on date of March 10, 1958. No appeal was taken and judgment became final. An abstract of the judgment was filed in Guadalupe County on April 17, 1958.

On June 28, 1958, Haynes and Miss Sasse were in California. Pursuant to Haynes' instructions Miss Sasse executed an assignment and transfer of all her title and interest in and to the property in Guadalupe County to Hunter. All prior arrangements whereby it was agreed between Hunter and Haynes that said assignment would be executed were held outside the presence of Miss Sasse. The instrument of assignment also purportedly transferred all rights in the "oil run" fund which had accumulated up to the time it was executed. The record is silent as to when said assignment was placed of record in Guadalupe County. The testimony of Miss Sasse is that she got nothing at any time as consideration for executing the assignment, and that she merely signed the same at the direction of Haynes. Hunter's testimony was that Haynes owed him several thousands of

dollars and that in consideration of the receipt of the assignment he "forgave" such debt on the part of Haynes. There was no testimony from Haynes.

On July 8, 1958, Pitcock caused execution to be levied upon the interest of Haynes, if any, in the property in Guadalupe County, and he bid in the same at Sheriff's Sale on August 5, 1958. The day before the levy of the execution, July 7, 1958, Pitcock applied for a writ of garnishment after judgment, whereby he sought the funds in the hands of the garnishee, the Texas Company, accumulated from the "oil runs" from the property. Said garnishee answered with impleader of other claimants to the fund, all of whom may be disregarded for our purposes save and except Hunter. With leave of the court the garnishee became a mere stakeholder of the funds garnished. No question exists in this court involving the propriety of the garnishment.

■ It is obvious from what we have stated that the trial court was at liberty to consider and hold the transactions on the part of Haynes to have been in fraud of his creditors under Vernon's Ann.Tex.Civ. St. art. 3996, "Conveyance to defraud", and art. 3997, "Voluntary Conveyance". Marion Sasse disclaimed any rights whatever. The question, therefore, is to be resolved upon the transaction of June 28, 1958 when Hunter received the assignment from Miss Sasse and not upon that of February 13, 1958. Hunter claims, as we have already stated, that he was an innocent purchaser for value, and that therefore his right to the garnishment fund is prior and superior to any right of Pitcock.

Trial was before the court without intervention of the jury. There are no findings of fact and conclusions of law in the record and none were requested. In the body of the judgment it is recited that Hunter paid no consideration to Marion Sasse for the assignment and that Hunter was not a bona fide purchaser for value in good faith

of the interest in the realty and funds impounded in garnishment.

In a suit such as that before us a plaintiff who seeks to establish the fact of fraud in a conveyance, and by reason of the fraud to set the same aside or to hold the same inoperative and unavailing to him who claims thereunder, his burden of proof is (1) to show the fraudulent intent on the part of the grantor; (2) when such intent is shown, the purchaser, in order to sustain the transaction, must show that he has paid value; (3) this being shown, the burden again shifts, and the creditor, in order to prevail in the action, must prove that, at the time of the payment, the purchaser had notice of the fraud. One reason for the second element of the rule is that the payment of the purchase money is a fact peculiarly within the knowledge of the purchaser. See Tillman v. Heller, 1890, 78 Tex. 597, 14 S.W. 700, 11 L.R.A. 628, 22 Am.St.Rep. 77; Belt v. Raguet, 1864, 27 Tex. 471; 20–A Tex.Jur., p. 624, "Fraudulent Conveyances", Div. "E. Practice and Procedure, 5. Evidence, a. Burden of Proof and Presumptions", sec. 178, "In General", p. 629, sec. 182, "Consideration", and p. 632, sec. 186, "Purchaser From Fraudulent Grantee".

In the instant case, in view of the state of the record before it, the trial court was at perfect liberty to decide, as it undoubtedly did, that Pitcock discharged his burden in proof that Haynes' intent was fraudulent, and that by and through him Miss Sasse's intent was also fraudulent. Further, the court was at liberty to find, as it undoubtedly did, that Hunter failed to discharge his burden of proof in establishment of any value paid. In arriving at the conclusion the court was entitled to disregard Hunter's evidence for he was an interested party. Of course the court was otherwise entitled to find against him on the theory advanced. Furthermore, the existence of any indebtedness owing to Hunter by Haynes (and/or Sasse), and whether the assignment to Hunter was made in settlement thereof, would be questions for the jury or other finder of fact. 20–A Tex.Jur. p. 648, et seq., "Fraudulent Conveyances", sec. 199, "Questions of Law and Fact Generally".

All of Hunter's points of error have been severally examined and are overruled.

Judgment is affirmed.